UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-cv-24987-JEM

OMKAR SINGH, as Personal Representative of the
Estates of PRATAP SINGH and MAYUARI SINGH, Deceased,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,
ID TOURS NEW ZEALAND LIMITED, and
WHITE ISLAND TOURS LIMITED,
      Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, ROYAL CARIBBEAN CRUISES, LTD.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION

The Plaintiff, by and through undersigned counsel, responds in opposition to Defendant, ROYAL CARIBBEAN CRUISES, LTD.'S ("RCCL['s]") Motion to Dismiss [D.E. 10].

## I.    Introduction

This matter arises out of the severe burns PRATAP SINGH and MAYUARI SINGH (at times "the Singhs" or "Plaintiffs") sustained while participating in an excursion to a volcano during a cruise with RCCL, which ultimately resulted in their deaths. [D.E. 1, ¶¶26-27].  Before participating, they obtained all of the information regarding the excursion from RCCL, and they made all of the arrangements for the excursion exclusively with RCCL. [Id. at ¶23].[1]

Unbeknownst to the Singhs at the time, weeks before the incident, the subject volcano was showing signs that an eruption was likely to occur. [Id. at ¶¶32-38].  In fact, three weeks before the incident, the volcanic alert level was increased to the highest level it can be when it is not erupting. [Id. at ¶34].  For weeks, the alerts also repeatedly warned that the volcano "may be entering a period where eruptive activity is more likely than normal." [Id. at ¶¶34-38].  In addition, there was an earthquake in the area two weeks before the incident, which indicated an eruption was more likely to occur. [Id. at ¶38(c)].  ***RCCL knew of the foregoing activity and notifications***, yet it failed to cancel the excursion or even warn passengers of the dangerous circumstances. [Id. at ¶¶29, 37].  As a result, the Singhs proceeded with the excursion, and shortly after their arrival, the volcano erupted and caused the Singhs' severe burns and eventual deaths. [Id. at ¶27].

At issue herein is RCCL's motion to dismiss all counts directed against it. [D.E. 10].

## II.    Count I: Negligent Misrepresentation

Count I of the Complaint asserts a negligent misrepresentation claim, which requires a plaintiff to show: "(1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1364, 1369 (S.D. Fla. 2019) ("*Serra-Cruz II*") (citations omitted).

RCCL only raises an issue as to the second element, arguing the Complaint "is devoid of facts supporting allegations that [its] representations… were in any way false." [D.E. 10, p. 3]. Yet even a cursory review of paragraph 41 of the Complaint proves otherwise, as follows:

---

[1] Although unknown at the time, the excursion was owned and/or operated by Defendants, ID TOURS NEW ZEALAND LIMITED and WHITE ISLAND TOURS LIMITED (collectively "Excursion Entities"). [D.E. 1, ¶26].

a. Misrepresenting the activity level and/or activities involved in the subject excursion as "strenuous," which merely warned passengers to consider their "physical fitness level and medical history" when determining whether the tour was appropriate for them, and ***failed to mention*** the risk of death or severe injuries, as alleged in paragraph 21; and/or

b. Implying that RCCL "thoroughly reviews" and/or verifies whether excursion providers utilize the proper equipment and/or ensure the safety of the gear used on excursions, as alleged in paragraph 20(b), ***when in actuality***, the Plaintiffs[2] were not provided with any equipment or gear to prevent them from getting burned during the subject excursion; and/or

c. Misrepresenting that the excursion providers are "reputable," as alleged in paragraph 20(c), ***when in actuality***, the subject excursion was not reasonably safe, for reasons alleged in paragraphs 27-38; and/or

d. Mispresenting shore excursions, including the subject excursion, as being RCCL's excursions through the use of proprietary language, as alleged in paragraphs 19(a) and 20(a), ***when RCCL claims*** that it was an independent contractor's (not RCCL's) excursion; and/or

e. Representing that shore excursion providers are insured, as alleged in paragraph 20(c), ***when such insurance may not*** cover claims outside of the providers' area of operation and/or may contain other limitations, such as the amount and types of claims covered; and/or

f. Representing and/or implying that excursion providers would be subject to personal jurisdiction in the United States and/or subject to United States and/or Florida law by contractually requiring all RCCL passengers (including the Plaintiffs) to file suit in a specific jurisdiction in the United States for all claims arising from the subject cruise (including incidents that occur while participating in shore excursions), ***pursuant to its ticket contract***, and/or advertising that its excursion providers are insured, as alleged in paragraph 20(c), ***when in actuality***, excursion providers (***including the Excursion Entities***) challenge this Court's personal jurisdiction and ***have limited insurance coverage as alleged above***.

[D.E. 1, ¶41] (emphasis added).

Thus, contrary to RCCL's boilerplate arguments, the Complaint specifies how each particular statement was false and misled the Singhs, and each allegation is accompanied by factual allegations demonstrating falsity with reference to RCCL's corresponding statements.

Notably, while RCCL attacks *some* of the alleged false statements above, RCCL does not attack *all* of them.   For instance, RCCL does not dispute the first alleged misrepresentation

---

[2] PRATAP SINGH and MAYUARI SINGH are collectively referred to as "Plaintiffs" in the Complaint. [D.E. 1, ¶2].

concerning the "activity level and/or activities" failing to "mention the risk of death or severe injuries," as alleged in paragraph 41(a).  By its silence, RCCL therefore concedes this alleged misrepresentation is actionable.

With regard to the remaining allegations, RCCL deceptively refers to an early ruling[3] by Judge Ungaro in *Serra-Cruz*, wherein the Court found plaintiff's allegations lacking.  Importantly, however, once the plaintiff amended the complaint ***in the same manner as the Complaint herein is pled***, the *Serra-Cruz* Court denied the cruise line's motion to dismiss the negligent representation claim, ***which included the same allegations presented in this case***. *See Serra-Cruz II*, 400 F. Supp. 3d at 1370 ("Although the Court previously found Plaintiff's allegations to be lacking specificity, the Second Amended Complaint now provides: (1) the exact statements that are alleged to be misleading or false; (2) the source of the allegedly misleading materials; and (3) where and when the allegedly misleading or false statements were made… Therefore, the Court finds that Plaintiff has met the heightened pleading standard of Rule 9(b).").

Similar to *Serra-Cruz II*, this Court also deemed similar allegations sufficient in *Doria v. Royal Caribbean Cruises, Ltd.*, 393 F. Supp. 3d 1141, 1145 (S.D. Fla. 2019), as well as *Adams v. Carnival Corp.*, 19-24578-CIV, 2020 WL 5246742, at *5 (S.D. Fla. Aug. 31, 2020) ("there is persuasive case law that holds that an alleged misrepresentation about an excursion being "safe" can give rise to a cognizable negligent misrepresentation claim").

As to the insurance allegations, contrary to RCCL's argument [D.E. 10, p. 4, n. 1], the Complaint explicitly alleges that "the Excursion Entities… have limited insurance coverage[.]" [D.E. 1, ¶41(f)].  Also contrary to RCCL's argument [D.E. 10, p. 4, n. 1], the Complaint makes it clear that the "[r]epresent[ation] and/or impl[ication]" of excursion providers being subject to personal jurisdiction in the U.S. is derived "by contractually requiring all RCCL passengers (including the Plaintiff) to file suit in a specific jurisdiction in the United States for *all claims* arising from the subject cruise (*including incidents that occur while participating in shore excursions*), ***pursuant to its ticket contract***…" [D.E. 1, ¶41(f)] (emphasis added).

Lastly, RCCL refers to its cruise ticket contract and brochure as evidence that Plaintiff's allegations in one (of the six) alleged misrepresentations is contradicted. [D.E. 10, pp. 4-5].  However, Plaintiff does not rely or even refer to the passenger ticket contract in support of Count I, and the brochure does not even contain the information RCCL relies on – it contains hyperlinks to

---

[3] The early ruling is cited as *Serra-Cruz v. Carnival Corp.*, 2019 U.S. Dist. LEXIS 23591 (S.D. Fla. Feb. 11, 2019) ("*Serra-Cruz I*").

other material, which is insufficient. This Honorable Court should therefore decline to consider the material outside the four corners of the Complaint for reasons explained further in Section V(A).

Regardless, the material does not defeat the claim in its entirety. This Court was recently presented with the same arguments RCCL makes herein to dismiss the negligent misrepresentation claim based on the same type of exhibits, but the Court rejected the argument, stating the "disclaimer alone is not enough to dismiss the claims as a matter of law… because an entity is not an 'independent contractor' just because that is what someone calls it." *Adams*, 2020 WL 5246742, at *5 (citing *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1237-38 (11th Cir. 2014)).

Additionally, while RCCL relies on the "Highlights" section of the excursion's description, the contents of that section do not even contradict Plaintiff's allegations. By RCCL's own admission, the "Highlights" section states the tour is "OPERATED BY A TOUR OPERATOR THAT HAS BEEN THIRD-PARTY VERIFIED TO AN INTERNATIONALLY RECOGNIZED SUSTAINABILITY STANDARD." [D.E. 10, p. 5]. Merely because the tour operator has been verified by another party for a "sustainability standard" does not negate Plaintiff's allegation that RCCL represents excursions as being RCCL's excursions through the use of proprietary language, as alleged in paragraph 41(d). In fact, the contents actually support Plaintiff's allegations that RCCL represented the "excursion providers [were] 'reputable,'" as alleged in paragraph 41(c).

Furthermore, as already stated, RCCL's argument in support of reviewing its exhibits only addresses <u>one</u> of the <u>six</u> allegations. Courts in this district, including this Honorable Court, have "repeatedly" refused to dismiss individual alleged breaches, stating that "[e]ven though certain of the alleged breaches… may not adequately state a negligence claim, the Court will not strike the alleged breaches in line-item fashion," when the plaintiff sufficiently alleges a facially plausible negligence claim. *See Cordani v. NCL (Bahamas) Ltd.*, 15-23414-CIV-MORENO, 2015 WL 7758512, at *2 (S.D. Fla. Dec. 1, 2015) (citations omitted); *see also Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1360 (S.D. Fla. 2016). Accordingly, all of RCCL's arguments as to Count I fail.

## III.   Count II: Negligent Selection and/or Retention

Count II asserts a claim for negligent selection and/or retention. It is "well-established that [cruise lines] may be liable for negligently hiring or retaining a contractor," including shore excursion operators. *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1318 (S.D. Fla. 2011). A plaintiff bringing a claim for negligent hiring or retention of an independent contractor must prove that "(1) the contractor was incompetent or unfit to perform the work; (2)

the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff[']s injury." *Id.*

Herein, the Complaint alleges the ***first element*** by stating that the Excursion Entities were incompetent and/or unfit based on the following:

a. The failure of the Excursion Entities to provide a reasonably safe excursion, considering the subject excursion was in a volcano that was active multiple times just a few years before the incident; and/or

b. The failure of the Excursion Entities to routinely monitor volcanic alert levels and/or volcanic activity to determine whether it was reasonably safe for passengers; and/or

c. The failure of the Excursion Entities to have reasonably competent and/or trained and/or supervised individual(s) operating and/or leading the subject excursion, considering the tour guide did not notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or

d. The failure of the Excursion Entities to have reasonably competent and/or trained and/or supervised individual(s) operating and/or leading the subject excursion, considering their decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed.

[D.E. 1, ¶48; *see also* ¶29].

The next paragraph of the Complaint then alleges the ***second element*** by specifying that RCCL knew or reasonably should have known of such incompetence and/or unfitness through, *inter alia*, "[p]rior incidents of eruptions during volcano tours" and "RCCL's initial approval process and/or yearly inspections, including, but not limited to, researching the volcano, having RCCL's representative(s) take the excursion, and conducting site inspections[.]" [D.E. 1, ¶49] (emphasis added). It then alleges the ***third element*** by alleging that, "[a]s a direct and proximate result of the Excursion Entities' incompetence and/or unfitness, the Plaintiffs were severely injured while participating in the subject excursion[,]" with each breach linked to causation. [Id. at ¶50].

Contrary to RCCL's argument, courts routinely find the above allegations sufficient to establish notice. *See Heller*, 191 F. Supp. 3d at 1358 n. 5 ("Plaintiff's allegation Carnival should have become aware of the risk-creating condition during inspections… is sufficient regarding Carnival's actual or constructive notice…"). Consistent with *Heller*, this Court recently held that the "**[p]laintiff's allegation that Defendant should have been aware of the risk-creating condition during inspections of the excursion is sufficient to provide actual or constructive**

notice of the risk-creating condition. Its sufficiency is based on the plausibility of the allegation and how the alleged facts raise a reasonable expectation that discovery could provide additional proof of Defendant's liability." *Kennedy v. Carnival*, 385 F. Supp. 3d 1302, 1331 (S.D. Fla. 2019), *report and recommendation adopted*, 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (emphasis added); *see also Serra-Cruz II*, 400 F. Supp. 3d at 1371 ("Plaintiff further alleges precisely what was or should have been revealed to Carnival through inspections and prior incidents… Thus, the Court finds that Plaintiff has pled sufficient facts… alleging Carnival had actual or constructive notice of the dangerous conditions of the Excursion.").

Contrary to RCCL's arguments and unlike the case of *Zhang v. Royal Caribbean Cruises, Ltd.*, 2019 U.S. Dist. LEXIS 199362 (S.D. Fla. Nov. 15, 2019) (which RCCL heavily relies on), the Complaint alleges (1) precisely what information RCCL should have acquired from its initial approval process and/or yearly inspections, and (2) how RCCL was on notice that the alert levels were not being routinely monitored, as follows:

> RCCL's initial approval process and/or yearly inspections… *did or should have revealed*: (1) the subject excursion was in a volcano that was active multiple times just a few years before the incident; (2) the volcanic alert levels and/or volcanic activity were not being routinely monitored to determine whether it was reasonably safe for passengers, *as evidenced by* the excursion not being canceled or postponed when the levels/activity increased, as they did weeks before this incident (*discussed in paragraphs 32-38*)[4]; (3) the tour guide(s) did not notify passengers of the alert levels, the volcanic activity and/or the risk of eruption; (4) the Excursion Entities proceeded with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed, as evidenced by the excursion not being canceled or postponed when the levels/activity increased, as they did weeks before this incident (*discussed in paragraphs 32-38*).

[D.E. 1, ¶49(b)] (emphasis added). Similarly, contrary to RCCL's argument and unlike *Zhang*, the Complaint also alleges precisely what information RCCL should have acquired from a previous eruption in another volcano tour, as follows:[5]

> Prior incidents of eruptions during volcano tours resulting in injuries to tourists, including, but not limited to, the 2018 Kilauea eruption that RCCL was aware of,

---

[4] The same paragraph goes on to make clear *how* RCCL knew the excursions were not being canceled or postponed, as follows: "RCCL knew the excursion was not being canceled or postponed when the volcanic levels/activity increased because, despite the levels/activities increasing weeks before the incident… and/or throughout their business relationship, RCCL sold tickets and paid the Excursion Entities for tours during that time period." [D.E. 1, ¶40(b)].

[5] As to whether the prior incident is similar enough to this incident, it is an improper determination to make at this stage. "The 'substantial similarity' doctrine does not require identical circumstances, and allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). The substantial similarity requirements also vary depending on the stage of the case. *See Ree v. Royal Caribbean Cruises Ltd.*, 315 F.R.D. 682, 685 (S.D. Fla. 2016).

*as alleged in paragraph 31*,[6] <u>which did or should have revealed</u> that the Excursion Entities' excursion was not reasonably safe and/or was incompetently operated because (1) it was on an active volcano (like Kilauea) that had erupted multiple times just a few years before the incident; and/or (2) it was proceeding to conduct tours despite the increased volcanic alert levels. [Id. at ¶49(a)] (emphasis added).

Notably, to this point, "RCCL canceled ***all*** shore excursions to active volcanoes," after the subject incident. [D.E. 1, ¶28]. If RCCL was able to make that decision after this incident, it could (and should) have made that decision after the 2018 incident, which is exactly what Plaintiff alleges in paragraph 31. Thus, all of these allegations are sufficient to plead a *prima facie* case for negligent selection and/or retention against RCCL.

## IV.    <u>Counts III and IV: Negligent Failure to Warn and General Negligence</u>

Counts III and IV of the Complaint assert claims for negligent failure to warn and general negligence against RCCL, respectively. All of RCCL's grounds for dismissal of these counts fail.

### A.    <u>RCCL's duty of care is properly pled.</u>

First, RCCL argues it only had a duty to warn, not a duty to use reasonable care, which is entirely contrary to the law. In the context of admiralty[7] torts, a ship owner's "duty" was defined in the seminal case of *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959), where the U.S. Supreme Court held that "the owner of a ship in navigable waters owes… the duty of exercising reasonable care under the circumstances of each case." *Id.* at 632. Consistent with *Kermarec*, the Complaint properly alleges that "it was the duty of RCCL to provide Plaintiffs with **reasonable… care under the circumstances**." [D.E. 1, ¶¶52, 60] (emphasis added). Yet RCCL argues the duty of reasonable care does not apply to incidents occurring *off* the vessel. Instead, according to RCCL, a cruise line merely owes passengers beyond the port (like the Singhs) a duty to warn of dangerous conditions it knew or should have known passengers would encounter where they are invited or reasonably expected to visit. [D.E. 10, p. 9]. Not only does this argument directly contradict binding precedent, but it also contradicts a plethora of rulings from this Court.

In fact, according to the Eleventh Circuit, the duty of reasonable care is owed to passengers regardless of whether a tort occurred on the ship or in a scheduled port of call off the ship. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004). In establishing this standard, the *Doe* court relied on the U.S. Supreme Court and acknowledged that (1) the stop "was a scheduled port-of-

---

[6] Paragraph 31 contains a link to an article discussing the prior eruption, which caused RCCL to "temporarily cancel[] cruises and/or tours…" [D.E. 1, ¶31]. The Plaintiff goes on to allege that the incident "should have been enough for RCCL to realize that tours to active volcanoes were unreasonably dangerous." [Id.]

[7] It is undisputed that general maritime law applies in this case. [D.E. 1, ¶6]; [D.E. 10, p. 3].

call, and was an integral part of the on-going cruise or maritime activity in this case" and (2) "in many ways this particular incident effectively began and ended aboard the cruise ship." *Id.* at 901; *see also Norfolk Southern R. Co. v. Kirby*, 543 U.S. 14 (2004) ("the shore is now an artificial place to draw a line"). The *Doe* court reasoned that destinations or ports of call are frequently "the main attraction" when a passenger selects a particular cruise. *Doe*, 394 F.3d at 901 (citing *Isham v. Pacific Far East Line, Inc.*, 476 F.2d 835, 837 (9th Cir. 1973) ("Where a… cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the sine qua non of the cruise.")).[8]

Herein, like *Doe*, the vessel's visit to White Island was a scheduled port of call and was an integral part of the ongoing cruise. Also like *Doe*, the particular incident effectively began and ended aboard the cruise ship. It is immaterial that, in addition to RCCL, a third party may have controlled and/or owned the excursion. Thus, RCCL's duty to exercise reasonable care extended to the Singhs' *entire* cruise, including his participation in the subject excursion.

***The duty to warn is not a separate standard of care.*** Further contrary to RCCL's assertions, the duty to exercise reasonable care *includes* the duty to warn. Indeed, RCCL's proposition that it owes onshore passengers a *separate* standard of care – a duty to warn – has been repeatedly refuted by numerous courts in this district. Specifically, in *Goldbach v. NCL (Bahamas) Ltd.*, the court recognized that a cruise line "owes a duty to its passengers to exercise reasonable care **under all the circumstances**. This duty *includes* a duty to warn passengers of dangers the cruise line knows or reasonably should have known." *Goldbach*, 2006 WL 3780705 (S.D. Fla. Dec. 20, 2006) (internal citations omitted) (emphasis added); *see also Wolf v. Celebrity Cruises, Inc.,* 101 F. Supp. 3d 1298, 1307 (S.D. Fla. 2015) ("The duty of care owed by a shipowner to its passengers of 'ordinary reasonable care under the circumstance'…. This duty *includes* a duty to warn passengers of dangers the cruise line knows or reasonably should have known.") (emphasis added); *Smolnikar*, 787 F. Supp. 2d at 1322 (same); *Burdeaux v. Royal Caribbean Cruises, Ltd.*, 2012 WL 3202948, at *3 (S.D. Fla. Aug. 3, 2012) aff'd, 562 F. App'x 932 (11th Cir. 2014) (same).

Notably, the argument RCCL makes herein was deemed a "misstatement of the law." *Heller*, 191 F. Supp. 3d at 1357, n. 4. The Court in *Heller* explained that "[w]hile generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have

---

[8] Under *Doe*, "the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law." *Id.* at 902. Therefore, the standard of care that governs a cruise line "should be uniform and not vary from port to port on a single cruise." *Id.* Under this analysis, the standard of care for negligence cannot vary depending on whether the tort occurred on the ship or at the port of call because it "would upset the very uniformity that the Supreme Court has determined is so important for maritime activity." *Id.*

additional obligations under the 'reasonable care' standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator." *Id.* (citation omitted).

Most recently, even the case that RCCL relies heavily on throughout its motion, *Serra-Cruz I*, confirmed *Heller*'s analysis and found that the cruise line was "incorrect that the duty to warn is the *only* duty it owes to passengers who disembark; they owe a duty of 'reasonable care under the circumstances.'… the duty to warn is part and parcel of the duty of ordinary care." *Serra-Cruz v. Carnival Corp.*, 2019 U.S. Dist. LEXIS 23591 (S.D. Fla. Feb. 11, 2019) ("*Serra-Cruz I*").

**The Plaintiff is not expanding RCCL's duties.** RCCL's argument that Plaintiff seeks to impose heightened duties of care fails at the outset because it is incorrectly premised on the notion that cruise lines only have a duty to warn.  It is also incorrect because RCCL misconstrues the allegations set forth in Count IV. Specifically, after alleging that RCCL owed the duty to provide reasonable care under the circumstances, the Complaint alleges the specific ways in which RCCL breached the duty of reasonable care owed to the Singhs. [D.E. 1, ¶61].

RCCL takes issue with the subsections of paragraph 61, arguing that Plaintiff is alleging "duties" not supported by law.  Contrary to its position, however, the subsections are not alleged as separate "duties" – they are merely included to support Plaintiff's negligence claim by pleading with sufficient factual information the specific ways in which RCCL breached the duty of reasonable care owed to the Singhs.  Each alleged breach is supported with plausible facts; whether it is considered "reasonable under the circumstances" (and therefore a breach) for RCCL to have taken the actions discussed in the subsections should not be determined at this pleading stage.

To that end, courts have consistently rejected the exact same argument RCCL makes, holding it is an issue more appropriate for summary judgment.  For instance, in *Balaschak v. Royal Caribbean Cruises, Ltd.*, the court stated as follows:

> According to Celebrity, [plaintiff] alleges "various duties" that are not owed by a carrier to a passenger under maritime law… Celebrity asserts that Count VI should be dismissed because [plaintiff] alleges she was owed a duty "greater than that supported by the law."….
>
> Here, [plaintiff] has pleaded facts showing that Celebrity owed her, as a passenger, a duty of care. [Plaintiff's] allegations have therefore notified Celebrity of her claim…. The merits of Count VI are best tested with a motion for summary judgment.

*Balaschak*, 2009 WL 8659594, at *5 (S.D. Fla. Sept. 14, 2009); *see also Bridgewater v. Carnival Corp.*, No. 10-22241-CIV, 2011 WL 817936, at *2 (S.D. Fla. Mar. 2, 2011) ("Carnival disputes

whether it owed a duty to Plaintiff under the facts as pleaded. However such a contention is more appropriate for summary judgment than for the consideration upon a motion to dismiss."); *see also Cordani*, 2015 WL 7758512, at *2 (refusing to dismiss individual breaches in line-item fashion).

**B.** **A determination as to whether the dangers at issue were "open and obvious" is inappropriate at this pleading stage and do not warrant outright dismissal, as it merely goes to the Singhs' comparative negligence.**

Next, RCCL argues it did not have a duty to warn of "inherent hazards of naturally occurring geographic conditions" because they are "open and obvious." [D.E. 10, p. 10]. RCCL also relies on its advertisement referring to White Island as an "active volcano." [Id. at pp. 10-14]. Yet these arguments are more appropriate for summary judgment, and even if successful, they are merely relevant to potential comparative negligence and do not warrant outright dismissal.

It is undisputed that "an operator of a cruise ship has a duty to warn of known dangers that are not open and obvious." *Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. Appx. 949, 952 (11th Cir. 2016) (citation omitted). Pursuant to the Eleventh Circuit, in determining whether a condition was open and obvious, the court should not only consider whether a reasonable person would have expected the danger, but also the "*extent*" of the danger. *Id.* at 953 (emphasis in original). Furthermore, a potential open and obvious danger "is not necessarily a total bar to recovery" and does not warrant outright dismissal. *Heller*, 191 F. Supp. 3d at 1359 (citing *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1309 (S.D. Fla. 2011) ("[E]ven when a person engaging in a noncontact sport such as diving knows of an open and obvious danger, the person may still recover damages under the principles of comparative negligence if the elements of the tort have been proven." (internal quotation marks and citation omitted; alteration in original)).

Herein, it cannot be said *as a matter of law* (as RCCL requests) that a reasonable person would have expected the excursion to visit a volcano that was going to erupt ***during*** the excursion, which RCCL was aware of weeks before the cruise. [D.E. 1, ¶¶21, 29-38]. Notwithstanding the "active volcano" description RCCL points to, as the Complaint makes clear, "[t]he potential danger of participating in this excursion was not open or obvious to the Plaintiffs based on the description because an 'active' volcano is defined as a volcano that has had at least <u>one eruption</u> during the past <u>10,000 years</u>." [Id. at ¶21] (emphasis in original).

The Complaint further alleges that "[u]nbeknownst to Plaintiffs, … this particular volcano had erupted <u>multiple times in the past ten years</u>, with the most recent being merely three years before the subject cruise, in 2016. In fact, the volcano had erupted in 2016, 2013, 2012, 2000 and

several times in the 1980s[.]  However, RCCL did not notify, warn, or disclose the history of four eruptions since 2000." [Id.].  RCCL also failed to disclose the heightened volcanic activity in the several weeks leading up to the excursion [id.], which is discussed in the next section.  Suffice it to say here, however, that RCCL was aware of multiple notifications warning that the volcano was close to erupting weeks before the excursion, and despite such notifications, RCCL failed to warn passengers (including the Singhs) of the increased volcanic activity. [Id.]

All in all, while the Singhs purchased an excursion to a volcano that *had previously erupted at one point in the past 10,000 years* (i.e., the definition of an "active volcano"), the Singhs were *not* aware that the excursion would be to a volcano that was *erupting during their visit*.  The *extent* of that danger was unknown to the Singhs because RCCL did not notify them of the repeated warnings weeks before their visit, which is the very point of Plaintiff's failure to warn claim.  Thus, Plaintiff alleges that the notifications/warnings RCCL received should have been provided to all passengers, including the Singhs. [D.E. 1, ¶55(a)].  As such, because the "extent" of the danger was unknown, dismissal is improper pursuant to the Eleventh Circuit in *Frasca*.

Alternatively, even if this Honorable Court agrees with RCCL's argument, dismissal is improper because Plaintiff may still recover damages under the principles of comparative negligence. *See Heller*, 191 F. Supp. 3d at 1359 (citing *Belik*, 864 F. Supp. 2d at 1309).

### C.  **RCCL's notice is unquestionably supported by underlying facts.**

Next, RCCL argues the Complaint does not contain sufficient facts concerning notice to trigger RCCL's duty [D.E. 10, p. 9], which is incorrect.

The applicable standard of reasonable care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).[9]  Herein, Plaintiff alleges the excursion was unreasonably hazardous due to "(1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the failure to routinely monitor volcanic alert levels and/or volcanic activity; (3) the failure to notify passengers of the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and/or (4) the decision to proceed with the excursion despite the increased volcanic alert levels, without adequately notifying passengers of the risk entailed." [D.E. 1, ¶29].

---

[9] Actual notice exists when the shipowner knows of the unsafe condition, while constructive notice exists when "the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures." *Lebron v. Royal Caribbean Cruises Ltd.*, 19-10115, 2020 WL 3397596, at *2 (11th Cir. June 19, 2020)

The Complaint then recites facts detailing exactly how RCCL did and/or should have acquired notice of such dangerous conditions.  It first alleges that RCCL's initial approval process and/or yearly inspections "would have revealed that the volcano was active numerous times in the past ten years[,]" which "should have been enough for RCCL to realize the volcanic activity level was too high and the risk was too great for its passengers." [Id. at ¶30].

In addition, the Complaint alleges RCCL's notice through a prior incident in 2018 involving a group of tourists injured when a volcano in Hawaii (Kilauea) erupted during their tour. [Id. at ¶31].  As a result of the 2018 incident, RCCL "temporarily canceled cruises and/or tours scheduled to visit the area." [Id.]  As alleged in the Complaint, the 2018 volcanic eruption "should have been enough for RCCL to realize that tours to active volcanoes were unreasonably dangerous. RCCL should have canceled all excursions to active volcanoes then, instead of waiting for dozens of its own passengers to be injured or killed [in the subject incident]." [Id.]

The Complaint further alleges "RCCL knew or should have known that there was a high potential for the volcano to erupt during Plaintiffs' excursion based on the increased alert level issued by New Zealand's volcano monitoring service, GeoNet, weeks before Plaintiffs' cruise." [Id. at ¶32]. The Complaint includes a detailed summary of four notifications from GeoNet, which warned as early as *six weeks before the incident* that the volcano's activity was the highest it had been since the last time it was active [id. at ¶33] and that the volcano "may be entering a period where eruptive activity [was] more likely than normal." [Id. at ¶¶34-36].  The Complaint then explicitly alleges that "RCCL knew or should have known of the above volcanic alert levels by directly monitoring the levels itself or being informed of such levels by the Excursion Entities." [Id. at ¶37].

The negligence counts reiterate that "RCCL knew of the foregoing dangerous conditions causing the Plaintiffs' incident and failed to warn [and did not correct them], or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them [and corrected them]." [Id. at ¶¶58, 63].  Despite RCCL's assertion, these allegations go on to state exactly how RCCL acquired such knowledge and what such knowledge should have revealed to RCCL, as follows:

> Prior incidents of eruptions during volcano tours resulting in injuries to tourists, including, but not limited to, the 2018 Kilauea eruption that RCCL was aware of, as alleged in paragraph 31, which did or should have revealed that the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active (like Kilauea) multiple times just a few years before the incident; and/or (2) the risk of death or severe injuries.

RCCL's initial approval process and/or yearly inspections of the… subject excursion, including, but not limited to, researching the volcano, having RCCL's representative(s) take the excursion, conducting site inspections…,  which did or should have revealed: (a) the dangers associated with participating in the subject excursion, including (1) the excursion taking place in a volcano that was active multiple times just a few years before the incident; (2) the increased alert levels, the increased volcanic activity and/or the increased risk of eruption; and (3) the risk of death or severe injuries….

[Id. at ¶58; *see also* ¶63 for allegations concerning the general negligence claim].

As previously held by numerous courts, the above allegations are more than sufficient to establish notice. *See Heller*, 191 F. Supp. 3d at 1358 ("Plaintiff's allegation Carnival should have become aware of the risk-creating condition during inspections… is sufficient regarding Carnival's actual or constructive notice…"); *Serra-Cruz II*, 400 F. Supp. 3d at 1371 ("Plaintiff provides sufficient factual detail regarding the alleged prior incidents… and how these incidents put [the cruise line] on actual or constructive notice…. Plaintiff further alleges precisely what was or should have been revealed to [the cruise line] through inspections and prior incidents…. Thus, the Court finds that Plaintiff has pled sufficient facts"); *Kennedy*, 385 F. Supp. 3d at 1331-32 ("in both this case and *Chaparro*, the plaintiffs sufficiently alleged that the defendant had actual notice of the dangerous condition through their familiarity with the excursions through their sales relationship, inspections, and continued partnership"); *Steffan v. Carnival Corp.*, 2017 WL 7796726, at *3 (S.D. Fla. May 22, 2017) (allegation that the cruise line represented it conducted regular inspections and audits of its tour providers' operations sufficient); *see also Adams*, 2020 WL 5246742, at *8 (allegation of the cruise line's "internal procedures to do initial and annual inspections of its shore excursions and… selling the… excursion through its website" deemed "sufficient" for  "reasonable inference that given [the cruise line's] monitoring of the safety of its excursion providers, it knew or should have known" of the alleged dangerous conditions).

Ultimately, Plaintiff is "not required to plead evidence, nor even all the facts upon which [the] claim is based." *Gentry v. Carnival Corp.*, 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. 2011); *see also Ash v. Royal Caribbean*, 13-20619-CIV, 2014 WL 6682514, at *6 (S.D. Fla. Nov. 25, 2014) ("As a practical matter, a personal injury plaintiff is often unaware of specific facts demonstrating that the defendant knew or should have known of a dangerous condition at the time the lawsuit is filed, before taking discovery. Plaintiffs sometimes obtain evidence of the defendant's knowledge during discovery, such as by obtaining evidence that the defendant was aware of prior injuries occurring under similar circumstances."); *Heller*, supra at n. 5 (citing *Ash*).

**D.** **The subject incident does not amount to an "Act of God" because Plaintiff alleges a plethora of notifications warning of an impending eruption, which RCCL was aware of and which defeat the "Act of God" defense.**

The last argument RCCL presents regarding Count III is that RCCL "had no ability to warn" about the volcanic eruption because it was an "Act of God." [D.E. 10, pp. 8, 13-14].

"An Act of God is a 'loss happening in spite of all human effort and sagacity.'" *Incardone v. Royal Caribbean Cruises, Ltd.*, 16-20924-CIV, 2020 WL 2950684, at *3 (S.D. Fla. Jan. 18, 2020) (citation omitted). Such a defense is defined as "any accident, due directly and exclusively to natural causes without human intervention, which by ___*no amount of foresight, pains, or care, reasonable to have been expected could have been prevented*___." *Id.*, at *3 (citing *Cenac Towing Co. v. Southport, LLC*, 232 F. App'x 929, 932 (11th Cir. 2007)) (emphasis added). The Act of God defense applies "to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords ___*no reasonable warnings*___ of them." *Incardone*, 2020 WL 2950684, at *3 (citing *Warrior & Gulf Nav. Co. v. United States*, 864 F.2d 1550, 1553 (11th Cir. 1989)) (emphasis added). "Defendant's burden is ___*heavy*___." *Incardone*, 2020 WL 2950684, at *3 (citing *Cenac*, 232 F. App'x at 932) (emphasis added).

Thus, for RCCL to meet its "heavy" burden, it must establish that there were _no_ warnings concerning anticipated eruptions on White Island, that RCCL could not have had _any_ foresight of anticipated eruptions on White Island, and that RCCL could not have taken _any_ actions to prevent the Singhs from being on White Island during the eruption. Considering Plaintiff's allegations and *Incardone's* guidance, RCCL does not even come close to meeting its "heavy" burden.

The *Incardone* matter involved the claims of "special-needs children and their families… for the alleged injuries they sustained when their cruise… encountered a winter storm with hurricane-force winds." *Incardone*, 2020 WL 2950684, at *1. The cruise line moved for summary judgment, arguing it was not liable because the storm was an "unpredicted and unavoidable Act of God." *Id.* at *2. The Court disagreed, finding the "[e]vidence regarding the crew's overreliance on forecasts, failure to heed weather updates, the U.S. Coast Pilot's warning, and the ability to turn around, among others, create[d] a genuine issue of material fact." *Id.* at *4.

While *Incardone*'s ruling was on a motion for summary judgment and not on the pleadings, it is directly applicable to the present case. For instance, like *Incardone*, Plaintiff alleges RCCL was aware of multiple warnings that the volcano's activity was the highest it had been since the last time it was active [D.E. 1, ¶33] and that the volcano was "entering a period where eruptive activity

- 14 -

[was] more likely than normal." [Id. at ¶¶34-36]. The warnings were issued repeatedly from *six weeks* to *less than one week before the incident*, and as such, Plaintiff alleges "RCCL knew or should have known that there was a high potential for the volcano to erupt during Plaintiffs' excursion[.]" [Id. at ¶32]. The Complaint further alleges RCCL should (and could) have taken action to prevent the Singhs from being on White Island during the eruption, including canceling the excursion or, at the very least, warning the Singhs about the increased volcanic activity before the excursion. [Id. at ¶¶28, 38, 55, 61]. Accordingly, RCCL's Act of God defense fails.

**V.      Count VI: Negligence based on Apparent Agency and/or Agency by Estoppel**

Count VI is a negligence claim against Defendants based on apparent agency or agency by estoppel. In short, this claim alleges RCCL is vicariously liable for the negligence of the Excursion Entities because the Excursion Entities were the apparent agents of RCCL.

**A.      Reviewing RCCL's exhibit(s) is improper at this pleading stage.**

RCCL's first argument is that the Singhs' belief that the Excursion Entities were RCCL's agents was unreasonable because the cruise ticket contract and excursion ticket allegedly stated the excursions were operated by independent contractors. [D.E. 10, pp. 16-18].[10]

It is well settled that, at this stage, the scope of a court's "review must be limited to the four corners of the complaint." *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002). In fact, pursuant to binding Eleventh Circuit precedent, the general rule is that a district court does "not consider anything beyond the face of the complaint… when analyzing a motion to dismiss." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). There is an exception for "cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to its claim, [3] its contents are not in dispute, ***and*** [4] the defendant attaches the document to its motion to dismiss." *Id.* (emphasis added). However, in this case, the cruise ticket contract, the excursion ticket, and the contract between RCCL and the excursion operator[11] do not meet **all four** requirements, as necessary. *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1188 (S.D. Fla. 2013) (noting that "each of [the] requirements" must be met).

Specifically, the *first requirement* is not met because Plaintiff never specifically referred to any of RCCL's exhibits in Counts VI or VII. The *second requirement* is not met either because

---

[10] Although RCCL also mentions the shore excursion brochure, RCCL admits the brochure does not contain the caveats it relies on; the brochure merely includes hyperlinks to other material containing the caveats. [D.E. 10, p. 16]. Nevertheless, the brochure does not meet all four requirements either because Plaintiff does not refer to it in Counts VI or VII, and it is not central to these claims.

[11] RCCL relies on the excursion contract (i.e., the Tour Operator Agreement ("TOA")) to dismiss Plaintiff's joint venture claim (Count VII). Therefore, Plaintiff addresses all exhibits together.

none of the documents are central to Plaintiff's claims.  The Plaintiff is not relying on these documents to prove Defendants were negligent.  Rather, the claims arise from the negligent conduct of the cruise line (RCCL) and the shore excursion providers (the Excursion Entities).  Addressing the same arguments as RCCL raises herein, courts in this district have refused to consider the ticket or contracts, finding that the plaintiff "does not *rely* on the contract for any of [her] claims." *Belik*, 864 F. Supp. 2d at 1310 (emphasis in original); *see also Gentry*, 2011 WL 4737062 ("[plaintiff] does not assert any breach of contract claims against [defendant]. Instead, she asserts claims based on tort theories. As such, the ticket contract is not essential or integral to [plaintiff's] claims, rather, it is part of [defendant's] defenses.").

In addition, **the Eleventh Circuit has been clear that merely calling parties "independent contractors" in contracts is not conclusive of the type of relationship the parties actually have in practice.** *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1238 (11th Cir. 2014) ("even if we were to look to the contract at this stage, *we would not consider the [medical personnel] to be independent contractors simply because that is what the cruise line calls them*") (emphasis added).  This applies equally to Plaintiff's joint venture claim because a "joint venture, like a partnership, can be created by express or implied contract," *Williams v. Obstfeld*, 314 F.3d 1270, 1275-76 (11th Cir. 2002), and two parties could create a joint venture notwithstanding a prior written contract foreclosing such a possibility. *Ash*, 2014 WL 6682514, at *8.  Thus, none of the documents are essential or integral to Plaintiff's negligence claims.

Similarly, the *third requirement* is not met either because the contents of the documents are in dispute.  "A document is considered 'undisputed' when the 'authenticity of the document is not challenged.'" *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 696 (11th Cir. 2014) (citation omitted).  Herein, there is no testimony that the Singhs even received their passenger or excursion tickets.

**B.  Reasonableness is a factual determination.**

Even if this Honorable Court considers the foregoing material at the motion to dismiss stage, it does not call for the dismissal of Count VI because the reasonableness of the Singhs' belief that the Excursion Entities were RCCL's agents is a question of fact.

Pursuant to the Eleventh Circuit, "apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Franza*, 772 F.3d at 1252.  Addressing only the second element, RCCL argues that,

because its ticket and contract calls excursion providers "independent contractors," the Singhs' belief that the Excursion Entities were RCCL's agents cannot be deemed reasonable, which defeats the apparent agency claim.  This argument, however, goes against binding precedent.

To that point, binding precedent holds that, "[u]nder the doctrine of apparent agency, just as in the case of actual agency, ***vicarious liability <u>turns on the facts</u> presented***." *Franza*, 772 F.3d at 1251-52 (emphasis added); *see also Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005) ("Courts in the Eleventh Circuit sitting in admiralty have held that... the existence of an agency relationship is a question of fact."); *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609 (S.D. Fla. 1995); *Archer v. Trans/American Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988)); *Belik*, 864 F. Supp. 2d at 1310 ("generally the question of whether an agency relationship exists is a factual question").

More specifically, in *Franza*, the Eleventh Circuit addressed the very issue presented herein because, like RCCL, the defendants argued that any agency claim failed at the pleading stage based, in part, on their ticket contract referring to the parties as "independent contractors." *See Franza*, 772 F.3d at 1238.  The Eleventh Circuit disagreed and explicitly held that whether the parties are considered independent contractors or agents is not determined by what they call themselves; rather, it is determined by their actual dealings with each other. *See id.* ("even if we were to look to the contract at this stage, we would not consider the [medical personnel] to be independent contractors simply because that is what the cruise line calls them").

Similarly, the cases RCCL cites to in its motion are not conclusive either.  For instance, *Wajnstat v. Oceania Cruises, Inc.*, 09-21850-CIV, 2011 WL 465340 (S.D. Fla. Feb. 4, 2011), and *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1328 (S.D. Fla. 2017) [D.E. 10, p. 17]. are easily distinguishable because they involved allegations of inadequate and/or improper medical care by the shipboard doctors.  The courts therefore held that the plaintiffs' belief was "unreasonable as a matter of **law**" because the case law at the time[12] held that cruise lines were not vicariously liable for their medical staff as a matter of law. *See Wajnstat*, 2011 WL 465340, at *4 ("Given the long standing maritime principle that carriers and shipowners are not vicariously liable for the acts of their medical staff… it is unreasonable for Plaintiff to believe that [the medical staff] were Defendant's agents."); *see also Gentry*, 2011 WL 4737062, at *5 (distinguishing *Hajtman*). **That is not the case with cruise lines and shore excursion operators.**

---

[12] Those cases and/or holdings have since been abrogated by the Eleventh Circuit's opinion in *Franza*, 772 F.3d 1225.

On the contrary, district courts have consistently denied cruise lines' motions to dismiss claims for apparent agency by properly relying solely on plaintiffs' allegations. *See Heller*, 191 F. Supp. 3d at 1362 (considering plaintiff's allegations "sufficient" to plead apparent agency); *Brown v. Carnival Corp.*, 215 F. Supp. 3d 1312, 1318 (S.D. Fla. 2016) ("Plaintiff has successfully pleaded her negligence claim, Plaintiff's factual allegations are sufficient to defeat the dismissal of her apparent agency claim"); *Lapidus*, 2012 WL 2193055, at *5 ("Plaintiff has adequately pled his claim for apparent agency as NCL's alleged manifestations are sufficient, at the pleading stage, to cause Plaintiff to believe that the Excursion Entities had authority to act for NCL's benefit"); *Gentry*, 2011 WL 4737062, at *6 ("Considering only the allegations in the complaint, it cannot be said that [plaintiff's] belief that an agency relationship existed was unreasonable as a matter of law."); *Belik*, 864 F. Supp. 2d at 1311; *Ash*, 2014 WL 6682514, at *7; *Serra-Cruz II*, 400 F. Supp. 3d at 1372; *Doria*, 393 F. Supp. 3d at 1147; *see also Adams*, 2020 WL 5246742, at *9.[13]

Herein, in support of the apparent agency claim, Plaintiff asserts: (1) RCCL allowed its name to be used in advertising of the Excursion Entities; (2) RCCL handled the arrangements of the excursion; (3) RCCL marketed the excursion using RCCL's company logo on its website and on brochures; (4) RCCL sold, provided information, and answered questions regarding the excursion through its onboard excursion desk; (5) RCCL recommended the Singhs not participate in other excursions; (6) the Singhs relied on RCCL's actions and/or statements; and (7) the Singhs would not have participated in the excursions if they had known it was not operated by RCCL. [D.E. 1, ¶¶74-77]. As in the cases cited above, these allegations are sufficient.

Further, the Complaint explicitly alleges the Singhs "reasonably relied on the above, to their detriment, so as to believe that the Excursion Entities were the employee[s] and/or agent[s] of RCCL in choosing the subject excursion." [Id. at ¶75].

## VI.   Count VII: Negligence based on Joint Venture

Count VII of the Complaint is a negligence claim based on a theory of vicarious liability under joint venture, thereby making RCCL liable for the negligence of and the Excursion Entities.

RCCL advances only one argument for the dismissal of this claim, which is that the terms of the Tour Operator Agreement ("TOA") demonstrate that Defendants did not intend to form a joint venture. [D.E. 10, p. 18]. However, Plaintiff does not reference or rely on the TOA, and as

---

[13] The remaining cases RCCL cites – *Verna v. Seven Seas Cruises De R.L., Ltd. Liab. Co.*, No. 13-23051-CIV, 2018 U.S. Dist. LEXIS 162610 (S.D. Fla. Aug. 28, 2018), *Ceithaml v. Celebrity Cruises Inc.*, 739 Fed. Appx. 546 (11th Cir. June 25, 2018), and *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786, 798 (11th Cir. 2017) – are also easily distinguishable because they were all summary judgment rulings, with reference to testimony and exhibits.

such, the Court should not review or consider the TOA.  Further, binding precedent establishes that the parties' _stated_ intent is not a determinative factor or even an essential element.

Pursuant to the Eleventh Circuit, in order to establish a joint venture relationship, there must be: "(1) a community of interest in the performance of the common purpose[;] (2) joint control or right of control[;] (3) a joint proprietary interest in the subject matter[;] (4) a right to share in the profits[;] and (5) a duty to share in any losses which may be sustained." _Wolf_, 683 Fed. Appx. at 798 (alterations in original).[14]

Noticeably absent from the essential elements set forth in _Wolf_ is any "intent" by the parties, which has been a longstanding principle in the Eleventh Circuit.  Specifically, similar to RCCL herein, the defendant in the case of _Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria_, 935 F.2d 208 (11th Cir. 1991), argued it was error to make a finding of a "joint venture without making a finding that the parties intended to create a joint venture[,]" but the Eleventh Circuit "disagree[d]." _Id._ at 212.  The Court noted it "kn[e]w little of the parties' true intentions, other than their largely self-serving testimony[,]" and "conclude[d] that whatever the true intent of the parties, their conduct (and the intent thereby evidenced) created a joint venture." _Id._ at 213. Therefore, the Eleventh Circuit explicitly stated that "self-serving" statements do not determine the "parties' true intentions." _Id._ District courts could instead examine the parties' actions and conduct to determine whether the parties actually intended to create a joint venture. _Id._[15]

Applying the above here, RCCL points to the TOA, which states that the Excursion Entities are independent contractors and not joint venturers. [D.E. 10, p. 18]  Yet these are exactly the types of "self-serving" statements that _Fulcher's Point_ warned are inconclusive.  The "true intent" of Defendants is established by their actions, which requires discovery. _See Wachovia Bank, N.A. v. Tien_, 534 F. Supp. 2d 1267, 1287 (S.D. Fla. 2007).  In the end, a "joint venture, like a partnership, can be created by express or implied contract," _Williams v. Obstfeld_, 314 F.3d 1270, 1275-76 (11th Cir. 2002), and two parties could create a joint venture notwithstanding a prior written contract foreclosing such a possibility. _Ash_, 2014 WL 6682514, at *8.

Herein, even a cursory review of the contract "as a whole" (as required under _Slater_) demonstrates a clear intent of the parties to create a joint venture, notwithstanding the way they

---

[14] Florida law is the same. _See Florida Tomato Packers, Inc. v. Wilson_, 296 So. 2d 536, 539 (Fla. 3d DCA 1974).

[15] This principle was well settled long before _Fulcher's Point_ and has remained binding precedent since then. _See, e.g., Slater v. Energy Servs. Grp. Int'l, Inc._, 634 F.3d 1326, 1330 (11th Cir. 2011) ("The court must look at the contract as a whole, the parties, and the purpose of the agreement to best determine the intent of the parties in interpreting the agreement.").

chose to define the relationship.[16] For instance, Section 1 of the agreement provides that the Excursion Entities are responsible for operating/providing the shore excursion. [D.E. 10-5, p. 1]. RCCL, however, has "sole discretion" to determine whether a passenger is entitled to a full or partial reimbursement of the excursion ticket if such passenger is dissatisfied. [Id.]. Pursuant to Section 3, RCCL also has "sole discretion" to determine the price to charge passengers for the Excursion Entities' excursion and is the "sole party" authorized to collect payments for the excursion. The Excursion Entities, however, are explicitly prohibited from "directly or indirectly offer[ing], sell[ing] or arrang[ing]" their own excursions to passengers. [Id. at p. 2]. Further, the Excursion Entities grant RCCL "a non-exclusive license for the use and display of [the Excursion Entities'] name and service marks[,]" and RCCL must approve the Excursion Entities' advertising, promotion, marketing, or publicity. [Id. at pp. 1-2]. Moreover, RCCL has the right to audit the Excursion Entities' "pertinent documentation (including its claims history…), at any time, without any advance notice," and to "inspect [their] facilities and operations" with 24 hours of advance notice. [Id. at p. 4]. Finally, Section 11 requires the Excursion Entities to indemnify RCCL "from and against any and all losses, claims… legal fees, costs and expenses" arising from the Excursion Entities' operations of the excursion. [Id. at p. 2].

At the very least, the above provisions create a question of fact as to whether or not the parties' conduct formed a joint venture. *See Misco-United Supply, Inc., v. The Petroleum Corporation et. al.*, 462 F.2d 75, 80 (5th Cir. 1972) ("Opposing inferences from contractual provisions as to the intentions of the parties regarding the creation of a joint venture will ordinarily give rise to a question of fact."); *see also Rose v. M/V Gulf Stream Falcon*, 186 F. 3d 1345 (11th Cir. 1999) ("[…] the district court's finding with respect to the existence of (or lack thereof) a joint venture is a factual determination that is reviewed under the clearly erroneous standard").

## VII.   Count VIII: Third-Party Beneficiary

Similar to the joint venture claim, RCCL moves to dismiss Plaintiff's third-party beneficiary claim on grounds that the allegations are contradicted by the terms of the TOA. Again, however, this argument fails for the same reasons: (1) it would require this Court to improperly review documents beyond the four corners of the complaint; and, (2) it involves questions of fact as to the parties' intent which are improper to determine at this stage.

---

[16] This is without waiver of Plaintiff's above argument that this Court's review should be limited to the four corners of the Complaint. Plaintiff only addresses the contractual terms in the event the Court disagrees with Plaintiff's argument and considers RCCL's exhibits.

It is undisputed that the intent of the parties is the key to determining whether a third party is recognized as an intended beneficiary (with rights to enforce the contract) as opposed to only an incidental beneficiary (with no enforceable rights under the contract).[17] *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005). To that end, in order to determine whether a contract was intended to benefit a third person, the Eleventh Circuit stated that "[t]he intention of the parties… is **determined by the terms of the contract *as a whole***, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish." *Id.* (emphasis added).

Thus, while RCCL refers to a clause in the TOA that disclaims any benefit to third parties, that *one* clause is not enough – the contract must be examined "*as a whole*," with consideration to the "circumstances" and "apparent purpose" of what Defendants were trying to accomplish. In doing so, the TOA terms do in fact infer an intent that RCCL passengers (including the Singhs) were intended beneficiaries and, as such, the issue should be left for the jury to decide.

Specifically, it is axiomatic that the overall "circumstances" and "apparent purpose" of the TOA intended to benefit passengers like the Singhs because the entire point of the TOA is for excursions to be provided to passengers like the Singhs. Then, under Section 1, the Excursion Entities are to satisfy the "highest standards in the industry" when providing the excursion. [D.E. 10-5, p. 1]. RCCL forbids the Excursion Entities from allocating their best tour guides, buses, hotel facilities, time slots, etc. to other cruise lines. [Id.]. Further, it is clear that the passengers' satisfaction was of the utmost importance when drafting the contract based on the fact that, as mentioned above, RCCL maintains "sole discretion" to determine whether a passenger is entitled to a full or partial reimbursement of the shore excursion ticket if "any Passenger is dissatisfied" [Id.]. The terms also specific that "all transportation provided in connection with [an excursion] shall be exclusively for Passengers…" [Id.]. The contract also requires the Excursion Entities to maintain insurance and specifies the amounts of coverage required, which is clearly for the benefit of passengers (like the Singhs), who are the ones participating in the excursion. [Id. at p. 2]. Lastly,

---

[17] Under Florida law, a third party is an intended beneficiary of a contract between two other parties only if a direct and primary object of the contracting parties was to confer a benefit on the third party. *Bochese*, 405 F.3d at 982; *see also Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 680 (11th Cir. 1999) ("A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party (or a class of persons to which that third party belongs)."). If the contracting parties had no such purpose in mind, then any benefit from the contract reaped by the third party is merely "incidental," and the third party has no legally enforceable right in the subject matter of the contract. *Bochese*, 405 F. 3d at 982. Thus, the test is whether the parties to the contract intended that a third person should benefit from the contract. *Id.* at 981-82.

RCCL explicitly forbids the Excursion Entities from taking any steps that contradict the passengers' agreement with RCCL to litigate all claims in this forum. [Id.].[18]

Thus, Plaintiff presents sufficient facts – both in the contract and in their Complaint – to infer Defendants' intent that should be decided by the jury, and RCCL's motion should be denied. Indeed, as numerous courts have recognized, the question of whether contracting parties intended to benefit a third party is a question of fact that is inappropriate at this stage.[19]

## VIII.   <u>Count IX: Breach of Non-Delegable Duty</u>

The last claim in the Complaint is breach of non-delegable duty under Count IX.  In its motion, RCCL argues this claim is improper "unless 'there is an express provision… guaranteeing safe passage.'" [D.E. 10, p. 20] (citation omitted).  However, RCCL's argument fails here, just as it has repeatedly failed in other cases, including *Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139 (S.D. Fla. 2016), and *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302 (S.D. Fla. 2019).

For starters, as this Court explained in *Witover*, "while concerns related to the doctrine of seaworthiness may limit causes of action for breach of a contract for carriage, ***such a limitation does not apply to a claim for breach of a shore excursion contract*…. *Therefore, an 'express provision ... guaranteeing safe passage' is <u>not required</u> to state a cause of action for breach of a shore excursion contract.*" *Witover*, 161 F. Supp. 3d at 1145-46 (emphasis added);[20] *see also Bailey*, 369 F. Supp. 3d at 1309 ("the Court agrees with other courts in this district that an 'express provision guaranteeing safe passage is not required to state a cause of action for breach of a shore excursion contract'").

"Further, where an excursion contract, entered into by a shipowner and a passenger, is alleged to include some sort of guarantee or assurance, a duty may be sufficiently alleged." *Bailey*, 369 F. Supp. 3d at 1309 (citing *Lienemann v. Cruise Ship Excursions, Inc.*, 18-21713-CIV, 2018 WL 6039993, at *8 (S.D. Fla. Nov. 15, 2018) (denying dismissal for failure to state a claim where

---

[18] The Complaint alleges facts consistent with the foregoing. [D.E. 1, ¶96].

[19] *See BGW Design Limited, Inc.*, 2010 WL 5014298, *5 (S.D. Fla. 2010) (The [contractual] intent of the parties is a factual matter and therefore should not be resolved on a motion to dismiss); *American Honda Motor Co., Inc., v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1176 (S.D. Fla. 2005); *Barnett v. Carnival Corp.*, 06-22521-CIV, 2007 WL 1746900, at *4 (S.D. Fla. 2007).

[20] The *Witover* Court relied on the following cases, which include binding precedent: *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 470 n. 8 (5th Cir. 1976) ("[T]he unseaworthiness remedy is not available for injuries which occur on shore during the loading or unloading process and which are not caused by a vessel on navigable water."); *Harling v. United States*, 416 F.2d 405, 406 (9th Cir. 1969) ("The doctrine of unseaworthiness does not extend to injuries caused by instrumentalities ashore."); *Kent v. Shell Oil Co.*, 286 F.2d 746, 752 (5th Cir. 1961) ("Where the injuries are sustained wholly *1146 ashore and are caused by a thing not a part of a vessel or its appurtenances, the failure or deficiency of such facility is not deemed either to constitute unseaworthiness or give rise to any recovery under the doctrine of seaworthiness.").

the passenger alleged the shipowner "promise[d] ... its contracted-for excursions utilized the best local providers at every p[o]rt" and "vouch[ed] for the safety/insurance record of the party with whom it independently contracted") (quotation altered for clarity); *see also Witover*, 161 F.Supp.3d at 1146 (finding passenger's allegation that shipowner orally "guarantee[d] ... the excursion was handicapped accessible ... sufficient to survive a motion to dismiss")); *see also Holcomb v. Carnival Corp.*, 20-22429-CIV, 2020 WL 6018782, at *6 (S.D. Fla. Oct. 6, 2020) (analyzing the same argument RCCL presents herein, the Court noted that "courts in our district have repeatedly rejected [the same] argument").

Among the allegations involved in *Bailey* were that (1) the cruise line "actively promoted, recommended, and, most importantly, vouched for" the excursion; (2) assured the plaintiff the excursion was "safe, insured, reputable, and reliable"; and (3) referring to the excursion as the cruise line's excursion. *Id.* at 1309.  According to the Court, "[t]hese allegations sufficiently plead the existence of a contractually created duty." *Id.*

Herein, Plaintiff pleads the exact same allegations as those alleged *and deemed sufficient* in *Bailey*.  The Plaintiff alleges RCCL promoted and vouched for the subject excursion. [D.E. 1, ¶100].  The Plaintiff alleges RCCL assured the Singhs the excursion was "reputable and insured," [id. at ¶20(b)], along with examples of such assurances in RCCL's advertisements [id. at p. 7].  And the Plaintiff alleges RCCL referred to the excursion as its own excursion, by using proprietary language [id. at ¶¶19(a), 20(a)], along with examples of such proprietary language in RCCL's advertisements [id. at pp. 6-7] (e.g., "our various shore excursions").

As in *Bailey*, the foregoing allegations sufficiently plead the existence of a contractually-created duty to provide the Singhs with a reasonably safe excursion, as alleged in the Complaint. [D.E. 1, ¶100].  The Plaintiff further alleges the manner in which RCCL breached its duty [id. at ¶101], and the damages were a result of RCCL's breach [id. at ¶102].  Accordingly, this Honorable Court should deny RCCL's motion to dismiss, as in *Witover, Bailey*, and *Holcomb*.

## IX.    Incorporated Motion for Leave to Amend

Should this Honorable Court grant RCCL's motion or any portion thereof, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).  As Plaintiff is unable to predict this Court's ruling, Plaintiff is unable to attach any proposed amended pleading (as required in this Court's Local Rule 15.1) to their incorporated Motion for Leave to Amend any claim this Court may deem inadequately pled.

Respectfully submitted,

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Jacqueline Garcell*
     **JASON R. MARGULIES** (FBN 57916)
     jmargulies@lipcon.com
     **MICHAEL A. WINKLEMAN** (FBN 36719)
     mwinkleman@lipcon.com
     **JACQUELINE GARCELL** (FBN 104358)
     jgarcell@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Jacqueline Garcell*
     **JACQUELINE GARCELL**

## SERVICE LIST
***Singh v. Royal Caribbean Cruises Ltd., et al.***
**Case No. 20-cv-24987-JEM**

| | |
|---|---|
| **Jason R. Margulies, Esq.** | **Jerry D. Hamilton, Esq.** |
| jmargulies@lipcon.com | jhamilton@hamiltonmillerlaw.com |
| **Michael A. Winkleman, Esq.** | **Carlos J. Chardon, Esq.** |
| mwinkleman@lipcon.com | cchardon@hamiltonmillerlaw.com |
| **Jacqueline Garcell, Esq.** | **Spencer B. Price, Esq.** |
| jgarcell@lipcon.com | sprice@hamiltonmillerlaw.com |
| LIPCON, MARGULIES | HAMILTON, MILLER & BIRTHISEL, LLP |
| & WINKLEMAN, P.A. | 150 Southeast Second Avenue, Suite 1200 |
| One Biscayne Tower, Suite 1776 | Miami, Florida 33131 |
| 2 South Biscayne Boulevard | Telephone: (305) 379-3686 |
| Miami, Florida 33131 | Facsimile: (305) 379-3690 |
| Telephone No.: (305) 373-3016 | *Attorneys for Defendant, Royal Caribbean* |
| Facsimile No.: (305) 373-6204 | |
| *Attorneys for Plaintiff* | |