UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number:  20-24987-CIV-MARTINEZ-BECERRA**

OMKAR SINGH, as personal representative of
the Estates of PRATAP SINGH and MAYUARI
SINGH, Deceased,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD., *et al.*,

      Defendants.

_____/

**OMNIBUS ORDER ON MOTIONS TO DISMISS**

      **THIS CAUSE** comes before the Court upon Defendant, White Island Tours, Ltd's Motion

to Dismiss Plaintiff's Complaint for Lack of Jurisdiction, (ECF No. 19), Defendant, ID Tours New

Zealand Limited's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction

(collectively, the "Excursion Entities' Motions), (ECF No. 23); and Royal Caribbean Cruises,

Ltd.'s Motion to Dismiss Plaintiff's Complaint for Failure to State a Cause of Action ("RCL's

Motion"), (ECF No. 10).   After careful consideration, the Court finds that the Excursion

Companies' Motions are **GRANTED** and RCL's Motion is **GRANTED in part** and **DENIED in**

**part**.

**I.**      **BACKGROUND**

      Pratap Singh and Mayauri Singh (the "Singhs") were honeymooners on Royal Caribbean

Cruise Line's ("RCL") vessel, the Ovation of the Seas.   (Compl. ¶¶ 13, 26, ECF No. 1).   The

Singhs purchased from RCL a ticket to attend an excursion in New Zealand called the "White

Island Volcano Experience Cruise and Guided Exploration" ("Excursion").   (*Id.* ¶¶ 16, 23).   RCL

advertised the Excursion on its promotional materials, including its website, and referred to the White Island volcano as "one of the most active volcanoes in the world." (*Id.* ¶ 21). RCL also classified the Excursion as "strenuous[]." (*Id.*). Defendant ID Tours New Zealand Ltd. ("IDT") is contracted by RCL as an independent contractor to offer excursions to RCL's passengers, including the subject Excursion. (IDT Mot., at 4, ECF No. 23; Palmer Decl. ¶¶ 5, 7, ECF No. 23-1). IDT is incorporated and based in New Zealand. (Compl. ¶ 4; IDT Mot., at 3). The Excursion was owned, operated, and managed by Defendant White Island Tours Ltd. ("WIT" and together with IDT, the "Excursion Entities"). (*See* Compl. ¶¶ 14, 23; WIT Mot. ¶¶ 3–4, ECF No. 19; IDT Mot. ¶ 3). WIT is a corporation based in Whakatane, New Zealand. (Compl. ¶ 4; WIT Mot. ¶ 1).

The Singhs attended the Excursion on December 9, 2019. (Compl. ¶ 26). Unfortunately for the Singhs and many others on the island, the volcano erupted while the Singhs were taking a tour of what appeared to be the center of the volcano, causing them severe injuries that led to their tragic deaths. (*Id.* ¶ 27). Unbeknownst to the Singhs, several weeks before the Excursion, the volcano was "showing signs of unrest[.]" (*Id.*). Indeed, "a few weeks prior to the [Excursion], the volcano's alert level was raised to a level 2 (the highest level it can be when it is not erupting), indicating a heightened volcanic unrest due to the increased activity." (*Id.* ¶¶ 21, 35). The alert levels remained high even one week before the Excursion. (*Id.* ¶ 36). Further, two weeks before the Excursion, a 5.9 earthquake struck approximately 6.2 miles northeast of the volcano. (*Id.*). The Singhs were not notified of the increased alert levels when they purchased their excursion ticket with RCL or on the day of the tour. (*Id.* ¶¶ 27, 29). After the incident, RCL canceled all shore excursions to active volcanoes, including the one to White Island. (*Id.* ¶ 28).

Plaintiff, Omkar Singh, as personal representative of the Singhs' Estates, filed this action against RCL and the Excursion Entities on behalf of the Estates and on behalf of all survivors who

are entitled to recover.   (Compl. ¶ 2).   Plaintiff alleges nine causes of action: (1) negligent misrepresentation against RCL; (2) negligent selection and/or retention against RCL; (3) negligent failure to warn against RCL; (4) general negligence against RCL; (5) negligence against the Excursion Entities; (6) negligence against all Defendants based on apparent agency or agency by estoppel; (7) negligence against all Defendants based on joint venture between RCL and the Excursion Entities; (8) third-party beneficiary; and (9) breach of non-delegable duty against RCL. Defendants each filed separate motions to dismiss.  (ECF Nos. 10, 19, 23).  The Excursion Entities both move to dismiss based on lack of personal jurisdiction.  RCL moves to dismiss all counts against it for failure to state a claim.

## II.    LEGAL STANDARD

### A.  Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction.  A federal court sitting in Florida may properly exercise personal jurisdiction over a non-resident defendant "only if the requirements of (1) the relevant state long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States are both satisfied."  *Johnson v. Royal Caribbean Cruises Ltd.*, 474 F. Supp. 3d 1260, 1265 (S.D. Fla. 2020).  Although "determining whether jurisdiction is appropriate under Florida's Long-Arm Statute is a separate inquiry from determining whether exercising personal jurisdiction comports with the Due Process Clause" it is clear that the constitutional requirements are "more restrictive." *Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. App'x 852, 859 (11th Cir. 2013) (quoting *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1207 (Fla. 2010)).

To establish personal jurisdiction over a nonresident defendant, a plaintiff "initially need

only allege sufficient facts to make out a prima facie case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). The Court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavit. *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1247, 1249 (11th Cir. 2000).

If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing that the state's long-arm statute is inapplicable. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the evidence proffered by the defendant contradicts the plaintiff's allegations, the burden shifts back to the plaintiff to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id*. Nonetheless, a party cannot meet its evidentiary burden by submitting affidavits asserting only "conclusory assertions of ultimate fact." *Posner*, 178 F.3d at 1215. Rather, the affidavits must "set forth specific factual declarations within the affiant's personal knowledge." *Id*. "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010)).

### B.  Failure to State a Claim

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added) (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.   DISCUSSION

Defendants WIT and IDT move to dismiss the Complaint arguing that this Court lacks personal jurisdiction over them.  RCL, on the other hand, moves to dismiss Counts I, II, III, IV, VI, VII, VIII, and IX for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  RCL also moves to strike Plaintiff's claims for non-pecuniary damages based on the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 30303.  The Court turns first to the Excursion Entities' Motions.  Then, it addresses RCL's motion to dismiss on the merits of the complaint.

### A. The Excursion Entities' Motions to Dismiss Based on Lack of Personal Jurisdiction

The Excursion Entities move to dismiss for lack of personal jurisdiction.  They argue that contrary to Plaintiff's allegations in the Complaint, the Court does not have personal jurisdiction pursuant to either Fla. Sat. § 48.193(1)(a)(9); Fla. Stat. § 48.193(2); or (3) Fed. R. Civ. P. 4(k).  In his response, Plaintiff appears to have abandoned his allegations that the Court has personal jurisdiction over the Excursion Entities pursuant to § 48.193(1)(a)(9) or § 48.193(2).  Instead, Plaintiff now argues for the first time that the Court has specific personal jurisdiction pursuant to

Fla. Stat. § 48.193(1)(a)(1), based on the Excursion Entities' alleged joint venture with RCL. Regardless, the Court finds that it lacks personal jurisdiction over the Excursion Entities under all the alleged bases.

### i.   Florida's Long-Arm Statute

A non-resident defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways.  "First, the Court can exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Camouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. § 48.193(2)). Second, the Court can exercise specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the enumerated categories set forth in Section 48.194(1)(a) of the Florida Statutes. *Schulman v. Inst. for Shipboard Educ.*, 624 Fed. App'x 1002, 1004–05 (11th Cir. 2015).

Plaintiff alleges in the complaint that the Court has personal jurisdiction over the Excursion Entities based on specific jurisdiction pursuant to Florida Statute § 48.193(1)(a)(9) and general jurisdiction pursuant to § 48.193(2).  Yet, in his response to the Excursion Entities' motions to dismiss, he appears to drop these bases for personal jurisdiction and spills much ink on an entirely new jurisdictional allegation.  Plaintiff now claims that that the Excursion Entities engaged in a "Miami, Florida-based joint venture to market, promote, sell, and operate the subject excursion[.]" (*See* Resp. WIT Mot., at 3, ECF No. 29; Resp. IDT Mot., at 3, ECF No. 30).

### a) *Fla. Stat. § 48.193(1)(a)(1): Specific Jurisdiction Based on Joint Venture*

As a threshold matter, Plaintiff's attempt to plead a new jurisdictional allegation is improper. Plaintiff cannot assert "what is essentially a new [jurisdictional allegation], not previously pled, in a response to a motion to dismiss[,]" and the Court need not consider it. *Seropian v. Wachovia Bank, N.A.*, No. 10-80397-CIV, 2010 WL 2949658, at *4 (S.D. Fla. July 26, 2010). The Court will nevertheless entertain the argument.

To begin with, because the Court finds that Plaintiff failed to plead the existence of a joint venture between the Excursion Entities and RCL, *see infra* Section III(B)(vi), it similarly finds that joint venture as a basis for jurisdiction fails. Notwithstanding, even if such a joint venture was found to exist, there is an insufficient basis for finding the requisite minimum contacts with the forum state for an exercise of personal jurisdiction over the Excursion Entities "absent explicit consent to be haled into this forum." *Slaihem v. Sea Tow Bah. Ltd.*, 148 F. Supp. 2d 1343, 1351 (S.D. Fla. 2001). Plaintiff argues that some activities of the alleged joint ventured were performed in Florida. For example, that the Excursion Companies provided RCL with a description of the subject excursion; that RCL marketed, promoted, and advertised the shore excursion to the Singhs based upon those descriptions; and that RCL (who is based in Miami) charged passengers a fee for the excursion and RCL collected payment for same from its Miami-based headquarters. (Resp. WIT Mot., at 2; Resp. IDT Mot., at 2). Even taking these into considerations, however, the alleged joint venture here did not "involve performance in *substantial part* within Florida" as is required under Florida law. *Id.* (citing *Sutton v. Smith*, 603 So.2d 693, 698 (Fla. 1st DCA 1992) (emphasis added). These activities are too attenuated and present insufficient contacts to result in personal jurisdiction over the Excursion Entities under subsection (1)(a).

### b) *Fla. Stat. § 48.193(2): General Jurisdiction Based on the Excursion Entities' Business Contacts with Florida*

Although Plaintiff does not argue in his response to the motions to dismiss that the Court has general jurisdiction pursuant to Section 48.193(2), he does allege it in his complaint and thus the Court is compelled to address this basis for the sake of completeness. But the analysis "practically ends before it begins." *See Thompson v. Carnival Corporation*, 174 F. Supp. 3d 1327, 1334 (S.D. Fla. 2016). Under Florida's long-arm statute, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Thus, the Court need only determine whether its exercise of jurisdiction over the Excursion Entities would exceed constitutional bounds. *Id.*

The Supreme Court has sweepingly declared "that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Thompson*, 174 F. Supp. 3d at 1334 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). The Court reinforced in *Daimler* that there are only two "paradigm bases" for asserting general personal jurisdiction over a corporation: (1) its place of incorporation, and (2) its principal place of business." 517 U.S. at 137. "The Court further determined that 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business' will be 'so substantial and of such a nature as to render the corporation at home in that State' only in 'exceptional' cases." *Thompson*, 174 F. Supp. 3d at 1334 (quoting *Daimler*, 517 U.S. at 139 n.19). The Court expressly rejected the notion that a foreign corporation could be subject to general jurisdiction in every state where it "engages in a substantial, continuous, and systemic course of business." *Daimler*, 517 U.S. at

137–38.

Here, there is no dispute that the Excursion Entities' place of incorporation and principal place of business is in New Zealand.  (*See* Compl. ¶ 4; IDT Mot., at 2; WIT Mot., at 2).  Thus, the only question remaining is whether this presents one of those exceptional cases in which the Excursion Entities' operations are "so substantial and of such a nature as to render the corporation at home" in Florida.  *See Daimler*, 517 U.S. at 139 n. 19.  It is not.

Even taking Plaintiff's allegations as true, most, if not all of the activities alleged by Plaintiff have been found by the Eleventh Circuit and the Supreme Court to be insufficient activities to render a foreign defendant corporation "at home" in this forum.  Plaintiff alleges that the Excursion Entities have engaged in activity within this state that includes, but is not limited to:

> (a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; (b) deriving a substantial portion of their revenues from their partnerships with them; (b) deriving a substantial portion of their revenues from their business with Florida-based cruise lines; (c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; (d) procuring insurance through companies in Florida; (e) maintaining Florida entities as "Agents of Record" for insurance purposes; (f) agreeing to insure and indemnify entities in Florida; (g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; (h) buying parts and/or supplies from Florida-based suppliers to operate their excursions; (i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; and/or (j) participating in cruise industry trade shows in Miami (e.g., Sea trade)."[1]

---

[1] The Court notes that Plaintiff groups together the allegations for general personal jurisdiction as it regards to both Excursion Entities.  However, based on the affidavits and other evidence presented by the Excursion Entities, it is apparent that these allegations are not applicable to both entities.  For instance, there is no contract between WIT and RCL nor has WIT entered into indemnification agreements or secured insurance in Florida.  Plaintiff has not met its burden of proffering evidence to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof[.]"  *See Posner*, 178 F.3d at 1215.  As previously stated, however, even taking these allegations as true, the Court does not have general jurisdiction over the Excursion Entities.

(Compl. ¶ 10).[2]

In *Carmouche v. Tamborlee Mgmt., Inc.*, the Eleventh Circuit found that even stronger connections than those of the Excursion Entities in this case were insufficient to find general jurisdiction. 789 F.3d 1201 (11th Cir. 2015). *Carmouche* involved a claim brought by a cruise passenger who sustained injuries during a shore excursion operated in Belize by a Panamanian-based corporation, Tamborlee. *Id.* at 1203. In *Carmouche*, the Eleventh Circuit found the following contacts as insufficient: (1) having a Florida bank account; (2) having two Florida addresses, one of which was a post-office box; (3) purchasing insurance from Florida companies; (4) filing a financing statement with the Florida Secretary of State; (5) joining a non-profit trade organization based in Florida; (6) consenting to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with Carnival Corporation. *Id.* at 1205. The Eleventh Circuit held that "[t]hese connections are not 'so substantial' as to make this one of those 'exceptional' cases in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business." *Id.* at 1204 (quoting *Daimler*, 517 U.S. at 139 n. 19). Similarly, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the Supreme Court held that a Texas court could not exercise general jurisdiction over a Colombian corporation consistent with due process, even though the corporation held a bank account in New York that accepted checks drawn on a Houston bank, sent its chief executive officer to Texas to negotiate a contract, purchased eighty percent of its helicopter fleet from Texas, and sent personnel to Texas for Training. 466 U.S. 408, 416 (1984).

---

[2] Plaintiff further alleges that RCL is "at home" in this jurisdiction because it maintains it principal place of business in Florida, and thus the Excursion Entities are also deemed at home "by its direct and indirect contacts with Florida." General jurisdiction, however, is based solely on the Excursion Entities' conduct, not that of RCL. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.").

In light of Eleventh Circuit and Supreme Court precedent rejecting similar, and arguably even stronger, jurisdictional allegations as the ones here, the Court would be hard-pressed to find that the Excursion Entities are "at home" in Florida based on the alleged contacts.  *See Hall*, 466 U.S. 408; *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786 (11th Cir. 2017); *Carmouche*, 789 F.3d 1201; *Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010).  A finding of general personal jurisdiction over the Excursion Entities in this case would offend due process.

       *c)*   *Fla. Stat. § 48.193(1)(a)(9): Specific Jurisdiction Based on a Contract*

Plaintiff's jurisdictional allegations based on Section 48.193(1)(a)(9) also fail.  Section 48.193(1)(a)(9) provides for specific jurisdiction where a defendant "enter[s] into a contract that complies with [Section] 685.102."  Section 685.102 allows for personal jurisdiction over a foreign defendant where

> the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a *choice of law of this state*, in whole or in part, has been made pursuant to s. 685.101 and which contains a provision by which such a person or other entity residing or located outside this state *agrees to submit to the jurisdiction* of the courts of this state.

Fla. Stat. § 685.102(1) (emphasis added).

Plaintiff alleges that the Court can exercise specific jurisdiction over both Excursion Entities pursuant to Section 48.193(1)(a)(9) because they entered into a contract with RCL which:

> (a) contains a choice-of-law clause designating Florida law as the governing law; (b) contains a provision whereby the Excursion Entities agreed to submit to the exclusive jurisdiction of the courts of Florida; (c) involves consideration of not less than $250,000 or relate to an obligation arising out of a transaction involving in the aggregate not less than $250,000; (d) does not violate the U.S. Constitution; and (e) has at least one party of the contract that is a resident of Florida or incorporated under the laws of Florida.

(Compl. ¶ 9).  Plaintiff essentially argues that because the Excursion Entities signed a contract with RCL and that contract contains a choice-of-law provision designating Florida law as the

governing law and the State of Florida as the place of exclusive jurisdiction, Plaintiff—even as a

non-signatory to the contract—can file suit against the Excursion Entities in Florida because the

lawsuit arises out of or relates to the said agreement.

Before addressing the merits of this argument, the Court notes that along with its Motion

to Dismiss, WIT submitted the declaration of Patrick O'Sullivan, its general manager, explaining

that "WIT has no partnerships or contractual or other business relationships with any cruise lines

in the state of Florida." (O'Sullivan Decl. ¶ 15, ECF No. 19-1). Having put forth evidence that

contradicts Plaintiff's jurisdictional allegations, the burden shifted back to Plaintiff to present

evidence supporting his allegations. *See Future Tech. Today*, 218 F.3d at 1249. Plaintiff, however,

failed to present any evidence, or even mention, the fact that WIT has no contractual relationship

with RCL. In his response, Plaintiff merely focuses on his joint venture argument, which the Court

has already rejected. As such, this basis for personal jurisdiction fails as to WIT.[3]

Turning to the merits, as Judge Moreno aptly explained in his recent decision in a lawsuit

filed against RCL by other victims of the same volcano eruption, "[c]ourts in this District have

considered this exact question and rejected [plaintiff's] argument." *See Barham, et al. v. Royal

Caribbean Cruises, Ltd.*, Case No. 20-22627-CIV, 2021 WL 3726144, at *9 (S.D. Fla. Aug. 23,

2021). Despite there being a contract[4] between IDT and RCL, "Plaintiff's use of subsection

---

[3] And even if a contract between these parties existed, the argument would fail for the same reasons it fails
as to IDT.

[4] At the motion to dismiss stage, the Court is generally limited to consideration of the four corners of the
Complaint. However, the Court may consider documents that are "central to or referenced in the complaint"
and undisputed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *see Day v. Taylor*,
400 F.3d 1272, 1276 (11th Cir. 2005). Plaintiff does not dispute the contents of the Tour Operator
Agreement in his response to the Excursion Entities' Motions, and in fact relies on the terms of the
agreement throughout his responses for his joint-venture-based jurisdiction argument. (*See* Resp. WIT's
Mot., at 3–6, 8 n.4, 11, 17–18; Resp. IDT's Mot., at 3–6, 9, 11, 15–17). Interestingly, and rather
conveniently, in his response to RCL's Motion, Plaintiff argues that he does not "reference or rely on the
[Tour Operator Agreement], and as such, the Court should not review or consider [it]" as to his negligence
based on joint venture claim. (Resp. RCL's Mot., at 17–18). Contrary to Plaintiff's contention, the

(1)(a)(9) through a third-party beneficiary claim is an attempted back door way through the contract to establish jurisdiction over a foreign defendant in a personal injury case." *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1361 (S.D. Fla. 2019) (internal quotation marks omitted). Indeed, "a plaintiff may not 'use the Agreement's consent to jurisdiction clause via a meritless third-party beneficiary claim to find jurisdiction over a foreign defendant in a personal injury case[,]' especially where, as here, the Tour Operator Agreement includes an express disclaimer of the existence of third-party beneficiaries." *Johnson v. Royal Caribbean Cruises, Ltd.*, 474 F. Supp. 1260 (S.D. Fla. 2020) (quoting *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1363 (S.D. Fla. 2019)).  Here too, the Tour Operator Agreement includes an express disclaimer of third parties as follows, "[o]ther than as expressly set forth herein, this Agreement shall not be deemed to provide third parties with any remedy, claim, right or action or other right."  (Tour Operator Agreement § 12.11, ECF No. 10-5).  The Court agrees with the various district courts decisions in this Circuit finding that an agreement cannot confer jurisdiction in a personal injury case merely because it contains a consent to jurisdiction clause.  *See, e.g.*, *Barham*, 2021 WL 3726144, at *9; *Johnson*, 474 F. Supp. 3d at 1267; *Serra-Cruz*, 400 F. Supp. 3d at 1361; *Evesson v. Carnival Corp. et al.*, No. 17-cv-23474, ECF No. 41 (S.D. Fla. June 20, 2018).

### ii. Fed. R. Civ. P. 4(k)(2): Federal Long-Arm Statute

Plaintiff also alleges that the Court can exercise personal jurisdiction over the Excursion Entities pursuant to Federal Rule of Civil Procedure 4(k)(2).  Where "a defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one state," Rule 4(k)(2) "permits a court

---

Complaint references the Tour Operator Agreement—albeit not by name, but merely calling it "agreement" or "contract"—on numerous occasions, and the agreement is central to Plaintiff's jurisdictional allegations. (*E.g.*, Compl. ¶¶ 9, 11, 81, 93–97).  Thus, the Court may consider the Tour Operator Agreement at this juncture.

to aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law;' and, (2) the exercise of jurisdiction must be 'consistent with the Constitution and laws of the United States.'" *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting Fed. R. Civ. P. 4(k)(2)). "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). For purposes of Rule 4(k)(2), the applicable forum for the minimum contacts analysis is the United States as a whole. *Id.* Because Plaintiff's maritime tort claims arise under federal law, the Court must determine whether the exercise of federal jurisdiction over the Excursion Entities would comport with the Fifth Amendment's Due Process Clause. The language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, therefore decisions interpreting the Fourteenth Amendment's Due Process Clause guide this Court's analysis of what due process requires in the Fifth amendment jurisdictional context. *Oldfield*, 558 F.3d at 1219 n.25.

Rule 4(k)(2) has been applied to invoke jurisdiction in rare occurrences. For instance, the D.C. Circuit held that Osama bin Laden and al Qaeda fell within the jurisdictional confines of Rule 4(k)(2) because they "engaged in unabashedly malignant actions directed at [and] felt in this forum." *Mwani*, 417 F.3d 1, 13 (D.C. Cir. 2005). The nationwide contacts of the defendants in that case included "ongoing conspiracies to attack the United States and efforts to 'bomb the United Nations, Federal Plaza, and the Lincoln and Holland Tunnels in New York.'" *Thompson*,

174 F. Supp. 3d at 1337 (quoting *Mwani*, 417 F.3d at 13).   The Fifth Circuit also affirmed jurisdiction pursuant to Rule 4(k)(2) in a case where it found the aggregate national contacts of an insurer "extensive." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

Unlike the circumstances in those cases, the ones here do not present one of the rare occurrences that warrant application of Rule 4(k)(2).   Indeed, the Excursion Entities' contacts with the United States are "no more continuous and systematic than the company's activities in Florida" and thus exercising general jurisdiction over them under Rule 4(k)(2) would offend due process. *See Fraser v. Smith*, 594 F.3d 842, 849 (11th Cir. 2010).   In this case, the Excursion Entities' connections to the United States are not "so substantial and of such a nature" as to make this one of those "exceptional" cases in which a foreign corporation is "at home" in a forum other than its place of incorporation or principal place of business. *See Daimler*, 517 U.S. at 139 n.19.

### iii.    Request for Jurisdictional Discovery

Plaintiff requests jurisdictional discovery in order to supplement his jurisdictional allegations. (Resp. IDT Mot., at 14; Resp. WIT Mot., at 16).   "The right to jurisdictional discovery is a qualified one, available 'when a court's jurisdiction is genuinely in dispute.'" *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786, 792 (11th Cir. 2017).   Plaintiff's request for jurisdictional discovery is unwarranted because there is "no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1290 (S.D. Fla. 2014); *see also Yepez v. Regent Seven Seas Cruises*, No. 10-23920-CIV, 2011 WL 3439943, at *1 (S.D. Fla. Aug. 5, 2011) ("[T]he failure of a plaintiff to investigate jurisdictional issues prior to filing suit does not give rise to a genuine jurisdictional dispute.").   Accordingly, Plaintiff is foreclosed from pursuing jurisdictional discovery in an attempt to marshal facts that he "should have had—but did not—before coming through the courthouse doors." *Lowery v. Ala. Power Co.*,

483 F.3d 1184, 1216 (11th Cir. 2007).

### iv.    Motion to Amend the Complaint

In response to IDT's Motion to Dismiss, Plaintiff asks, in the alternative, for leave to amend the Complaint to add a *quasi in rem* action against IDT pursuant to Supplemental Rule B(1)(a) of the Federal Rules of Civil Procedure.  (Resp. IDT Mot., at 16–18).  This request is improperly brought in a response to a motion to dismiss and is therefore denied.  *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is embedded within an opposition memorandum, the issue has not been raised properly.").

### B.  RCL's Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

RCL moves to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court addresses each count in turn below.

### i.    Count I: Negligent Misrepresentation Against RCL

Plaintiff alleges that RCL made several misrepresentations about the subject excursion and the excursion providers which the Singhs relied on.   These representations include: (1) representing the activity level involved in the subject excursion as "strenuous," which only warned passengers to consider their physical fitness level and medical history; (2) implying that RCL "thoroughly reviews" or verifies whether excursion providers provide adequate equipment and ensures their safety; (3) representing excursion providers as "reputable"; (4) misrepresenting shore excursions as being RCL's excursions through the use of proprietary language; (5) representing that shore excursion providers are insured when the insurance may not cover outside of the provider's area of operation or may contain other limitations; and (6) representing or implying that excursion providers would be subject to personal jurisdiction in the United States and Florida law

"by contractually requiring all [RCL] passengers to file suit in a specific jurisdiction." (Compl. ¶ 41(a)–(f)). RCL argues that the Complaint is "devoid of facts supporting allegations that [its] representations . . . were in any way false." (RCL Mot., at 3).

> To prevail on a negligent misrepresentation claim, Plaintiff must sufficiently allege:
>
> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation."

*Fojtasek v. NCL (Bah.) ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009) (citing *Wallerstein v. Hospital Corp. of Am.*, 573 So.2d 9, 10 (Fla. 4th DCA 1990)). Where a plaintiff alleges reliance on advertisement, such reliance must be "reasonable and justified under the circumstances," *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992), and must show a "causal connection," namely "that the wrong [committed by the defendant] was the proximate cause of [the plaintiff's] injury or damage," *Vance v. Indian Hammock Hunt & Riding Club*, 403 So. 2d 1367 (Fla. 4th DCA 1981). Since negligent misrepresentation is an allegation of fraud, it is also subject to the heightened pleading standard of federal Rule of Civil Procedure 9(b), which requires a plaintiff to establish the "who, what, when, where, and how" of the fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

Taking Plaintiff's allegations as true, as the Court must, the Court finds that Plaintiff sufficiently pleads a claim for negligent misrepresentation. The Court need not look further than Plaintiff's first representations that the activity level of the excursion was "strenuous" and that the excursion providers are "reputable." (Compl. ¶ 41(a), (c)). Stating only that the activity level is "strenuous" arguably suggests that passengers should consider only their physical fitness and medical history, rather than the risk that the volcano could erupt and cause injuries and even death.

Next, as to RCL's representation that the Excursion Entities were reputable, assuming the facts in the complaint as true, RCL knew or should have known that the Excursion Entities were not reliable because, despite recent volcanic activity levels, the Excursion Entities did not cancel the excursion.  *See Barham*, 2021 WL 3726144, at *3.  Accordingly, the Court finds that Plaintiff has plausibly pled a claim for negligent misrepresentation.  Thus, **Count I survives**.

### ii.    Count II: Negligent Selection and/or Retention Against RCL

Plaintiff argues that RCL negligently selected and/or hired the Excursion Entities in violation of its duty to select and/or hire competent and/or fit excursion operators.  (Compl. ¶¶ 45–51).  RCL argues that this cause of action should be dismissed because Plaintiff failed to allege sufficient facts supporting that ID Tours was unfit or incompetent "let alone that lack of fitness or competence proximately caused the Singhs' deaths."  (RCL Mot., at 6).

Negligent selection or hiring and negligent retention are two separate and distinct causes of action.  *Ferretti v. NCL (Bah.) Ltd.*, No. 17-CIV-20202, 2018 WL 3093547, at *2 (S.D. Fla. June 22, 2018).  To state a claim for negligent selection or hiring of an independent contractor, Plaintiff must allege that: "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury."  *Id.* (citing *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786, 796 (11th Cir. 2017).  The only difference between negligent selection and negligent retention claims is the time at which the employer or principle is charged with knowledge of the employee or contractor's unfitness.  *See Ferretti*, 2018 WL 3093547, at *2; *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1318 n.7 (S.D. Fla. 2011).  Negligent selection focuses on what the defendant knew before hiring while retention focuses on what the defendant knew while the employee or contractor was retained.  *Giuliani v.*

18

*NCL (Bah.) Ltd.*, No. 20-cv-22006, 2021 WL 2573133, at *5 (S.D. Fla. June 23, 2021).

Here, Plaintiff does not sufficiently allege facts supporting the second element of both negligent selection and negligent retention. Plaintiff alleges that RCL knew or should have known about the Excursion Entities' incompetence or unfitness and that this knowledge should have been acquired through: (1) prior incidents during volcano tours resulting in injuries to tourists; (2) RCL's initial approval process and/or yearly inspections of the Excursion Entities; (3) the volcanic alert levels and/or volcanic activity not being routinely monitored; (4) thorough inquiry into the Excursion Entities' certification(s), reputation, reviews, prior incidents, years in operation, and/or history working with other cruise lines; and (5) periodic requests and examinations of safety history reports from the Excursion Companies. Yet, Plaintiff fails to allege facts showing how RCL's approval process, inspections, or reviews could have placed RCL on notice of the alleged dangerous conditions. *See Sanlu Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773-CIV, 2019 WL 8895223, at *5 (S.D. Fla. Nov. 15, 2019). Plaintiff does not allege how a prior volcano tour incident, not involving the Excursion Entities, could have put RCL on notice that the Excursion Entities did not provide a "reasonably safe excursion." Or how RCL's alleged inspections could have revealed that the Excursion Entities failed "to provide a reasonably safe excursion considering the subject excursion was in a volcano that was active multiple times a few years before the incident[.]" (Compl. ¶48(a)). The Court agrees with RCL that Plaintiff's allegations are "wholly conclusory, resting on purely 'naked assertions devoid of further factual enhancement.'" *Zhang*, 2019 WL 8895223, at *5 (quoting *Thompson*, 174 F. Supp. 3d at 1334).

Moreover, allegations that may be sufficient to state a claim for negligent retention may not be sufficient to state a claim for negligent hiring. *Ferreti v. NCL (Bah.) Ltd.*, No. 17-cv-20202, 2018 WL 3093547, at *2 (S.D. Fla. June 22, 2018). Plaintiff alleges that RCL knew of the

Excursion Entities' incompetence and/or unfitness, or that they should have known because the conditions existed for a sufficient length of time. (Compl. ¶ 49). But Plaintiff does not specify whether RCL knew or should have known of the Excursion Entities' alleged incompetence or unfitness prior to or after RCL's hiring of the Excursion Entities. *See Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1205 (S.D. Fla. 2020). These, and many other allegations like it in the Complaint are "'temporally ambiguous,' leaving the Court 'unable to determine whether Plaintiff[s] [are] alleging that [RCL] failed to investigate [the Excursion Entities] before [they were] hired or after." *Id.* (quoting *Ferreti*, 2018 WL 3093547, at *2) (alterations added).

Because the Court finds that Plaintiff has not pled sufficient facts as to its claim for negligent hiring and retention, **Count II is dismissed without prejudice**.[5]

### iii.   Count III and IV – Negligent Failure to Warn and General Negligence Against RCL

Both RCL and Plaintiff address these two causes of action together in their filings and so too will the Court. Plaintiff alleges in his Complaint that RCL had a duty to warn its passengers, including the Singhs, of the dangers that were known, or reasonably should have been known, to RCL. (Compl. ¶ 53). Among others, Plaintiff alleges that RCL failed to adequately warn or communicate to passengers of (1) the dangers associated with going on an excursion to a volcano that was active multiple times a few years before the incident at issue; (2) the increased alert levels, the increased volcanic activity, or the increased risk of eruption; and (3) the risk of death or severe

---

[5] RCL also argues that Plaintiff failed to allege sufficient facts as to the ID Tours' incompetence or unfitness. The Court is unconvinced that these allegations do not suffice. Plaintiff sufficiently alleges that the Excursion Entities were incompetent or unfit because they failed to provide a reasonably safe excursion; they failed to routinely monitor volcanic alert levels or activity to determine whether it was reasonably safe for passenger; they failed to have reasonably competent and trained individuals operating and leading the excursion. (Compl. ¶ 48((a)–(d)). As to RCL's argument that Plaintiff failed to sufficiently allege facts that Singhs' injuries were proximately caused by the Excursion Entities' unfitness, the Court is similarly unconvinced. The allegations in the Complaint directly link ID Tours' alleged incompetence or unfitness with the injuries sustained by the Singhs. (*See* Compl. ¶ 50).

injuries.  (Compl. ¶ 55).   As to his general negligence claim, Plaintiff alleges that RCL failed to provide reasonable or ordinary care by, *inter alia*, promoting the subject excursion as "thoroughly reviewed" by RCL failing to promulgate or enforce adequate policies and procedures for the Excursion Entities to routinely monitor volcanic alert levels and activity and notify RCL and passengers of the same, and to cancel or postpone excursions when volcanic levels rise; by failing to cancel or postpone excursions when alert levels and volcanic activity rise; and by failing to regularly and adequately identify the highest safety standards in the industry for these types of activities.  (Compl. ¶ 61(a)–(f)).

RCL moves to dismiss on the basis that (1) Plaintiff seeks to impose heightened duties of care; (2) the dangers of the excursion were open and obvious, and that even if RCL owed a duty to warn the Singhs; (3) RCL could not have known that the volcano would erupt because it was an unpredictable "Act of God."

To state a negligence claim, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Chaparro v. Carnival Corp.*, 696 F.3d 1333, 1336 (11th Cir. 2012).  Federal maritime law applies where, as here, the claim is based on an alleged tort occurring at an offshore location during the course of a cruise.  *See Smolnikar*, 787 F. Supp. 2d at 1315 (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir. 2004)).

Under maritime law, a ship owner "owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case."  *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir. 1989) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).  This "requires, as

a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322.  Because cruise ship operators are common carriers with a "continuing obligation of care for their passengers," *see Carlisle v. Ulysses Line Ltd. S.A.*, 475 So.2d 248, 251 (Fla. 3d DCA 1985), their duty of care includes a duty to warn passengers of the "known dangers" which exist "beyond point of debarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336.  This duty "encompasses only 'those dangers which are not apparent and obvious to the passenger.'" *Smolnikar*, 787 F. Supp. 2d at 1323 (quoting *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006)).  The duty to warn extends only to specific, known dangers particular to the places where passengers are invited or reasonably expected to visit, not to general hazards. *Aronson*, 30 F. Supp. at 1392–93 (citations omitted).

RCL first argues that Plaintiff seeks to impose "nonexistent, heightened duties of care" by, for instance, alleging that RCL breached its duty of care by "failing to regularly and/or adequately identify the highest safety standards in the industry."  (RCL Mot., at 9).  While the Court agrees that perhaps this particular allegation is beyond RCL's duty to exercise "reasonable care" and warn passengers of known dangers, Plaintiff nevertheless presents various other allegations that fall within this duty.  For example, Plaintiff alleges that RCL had a duty to warn its passengers, including the Singhs, of the dangers associated with going on an excursion to a volcano that was active multiple times a few years before the incident at issue, of the increased volcanic activity and increased risk of eruption, and the risk of death or severe injuries.  (Compl. ¶¶ 55, 61).

RCL claims that the dangers of an excursion to an active volcano are open and obvious and therefore it had no duty to warn its passengers.  The Court disagrees.  "Open and obvious

conditions are those that should be obvious by the ordinary use of one's senses." *Lancaster v. Carnival Corp.*, 85 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015). Whether a danger is open and obvious is determined from an objective, not subjective, point of view. *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015) (internal quotation marks and citations omitted). Even where a plaintiff may be able to ascertain a condition via his senses, however, the conditions may not necessarily alert a reasonable observer as to the extent of the danger, triggering a duty to warn. *Frasca v. NCL (Bah.), Ltd.*, 654 F. App'x 949, 952–53 (11th Cir. 2016). It is here where RCL's argument fails, because, while a reasonable person could perceive the general dangers of an active volcano, he may not be able to ascertain just how dangerous it is to visit the White Island volcano or high likely it is to erupt. A reasonable person may not know that this volcano had erupted multiple times in the past ten years, with the most recent eruption being only three years prior to the excursion at issue here. (*See* Compl. ¶ 21). Or he may not know that an earthquake hit the area only a couple of weeks before the Excursion and that the volcano alert level was the highest it had been since the last time it erupted.

Finally, RCL contends that it could not have known that the volcano would erupt because it was an "Act of God." An Act of God is "an accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains, or care, reasonably to have been expected, could have been prevented." *Cenac Towing Co. v. Southport, LLC*, 232 Fed. App'x 929, 932 (11th Cir. 2007). This defense applies "to events in nature so extraordinary that the history of climactic variations and other conditions in the particular locality affords no reasonable warnings of them." *Incardone v. Royal Caribbean Cruises, Ltd.*, no. 16-20924-CIV, 2020 WL 2950684, at *3 (S.D. Fla. Jan. 18, 2020). RCL bears a heavy burden to prove this defense. *Id.* (citing *Cenac*, 232 F. App'x at 392). RCL argues that a change in volcanic activity

levels has no bearing on its ability to predict when the volcano would erupt.  Plaintiff, however, alleges that RCL was aware of multiple warnings that the volcano's activity was the highest it had been since the last time it erupted and that RCL should have known this and canceled the Excursion, or at the very least, warned the Singhs of the increased volcanic activity before the Excursion.  In that regard, it cannot be said that "no amount of foresight, pains, or care" could have prevented this accident.  *See Cenac*, 232 Fed. App'x at 932.  As Judge Moreno appropriately stated in *Barham*: "[i]t does not take divine powers to be on actual or constructive notice of that dangerous condition."  2021 WL 3726144, at *5.  For these reasons, **Counts III and IV survive**.

### iv.    Count V – Negligence Against the Excursion Entities

This claim is **dismissed**, as the Court has found that it lacks jurisdiction over the Excursion Entities.  *See supra* Section III(A).

### v.    Count VI – Negligence Against Defendants Based on Apparent Agency or Agency by Estoppel

Plaintiff alleges that the Excursion Entities were the apparent agents of RCL and thus RCL should be vicariously liable for the Excursion Entities' alleged negligence.  (Compl. ¶¶ 72–79). Plaintiff further alleges that RCL "made manifestations which caused the [Singhs] to believe that the Excursion Entities had authority to act for the benefit of [RCL]."  (Compl. ¶ 74).  RCL, on the other hand, argues that "the very documents that Plaintiff invokes" contradict his allegations. (RCL Mot., at 15).  According to RCL, these documents expressly disclaim that the Excursion Entities are independent third parties and that RCL has no responsibility for their performance. (*See id.* at 16).

Under federal maritime law, a defendant can be vicariously liable for actions of its apparent agents.  *See Smolnikar*, 787 F. Supp. 2d at 1324 (citing *Archer v. Trans/Am. Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988)).  "The doctrine of apparent agency allows a plaintiff to sue a principal

for the misconduct of an independent contractor who only reasonably appeared to be an agent of the principal." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1249 (11th Cir. 2014). Apparent agency is established when (1) the alleged principal causes, through some manifestation, a third party to believe an alleged agent has authority to act for the benefit of the principal; (2) such belief is reasonable; and (3) the third party reasonably acts on such belief to her detriment. *See Smolnikar*, 787 F. Supp. 2d at 1324.

RCL urges this Court to consider documents outside the four corners of the Complaint: (1) the Passenger Ticket Contract found in RCL's website, and (2) the shore excursion brochure. In deciding whether the Court can consider these documents, the Court must determine whether the documents are referenced in the complaint, whether they are central to Plaintiff's claim, and whether its contents are not in dispute. *See Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1397 (S.D. Fla. 2014). RCL is correct that Plaintiff referenced RCL's website, which contains the passenger ticket contract, and the shore excursion brochure in the Complaint. (*E.g.*, Compl. ¶¶ 17–20, 74). Yet, courts in this district have found that documents like these are not central to a claim where the claim is based in tort and not in contract. *See Barham*, 2021 WL 3726144, at *6 (declining to consider the same very same documents at the motion to dismiss stage); *Kennedy v. Carnival Crop.*, 385 F. Supp. 3d 1302 (S.D. Fla. 2019) (declining to consider the passenger ticket found on defendant's website because the document is not central to the plaintiff's claim "as it is based in tort rather than contract."), *adopted by* No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019); *Heller*, 191 F. Supp. 3d at 1361–62 (declining to consider ticket contract because it was not central to plaintiff's negligence claim based on apparent agency); *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1310 (S.D. Fla. 2011) (declining to consider ticket contract because it was not central to plaintiff's claims based on actual agency

because "[w]hile Plaintiff refers to the ticket contract . . . , he does not *rely* on [it] for any of his claims." (alteration added)).

RCL points to *Wajsntat v. Oceania Cruises, Inc.*, No. 09-21850-Civ, 2011 WL 465340, at *4 (S.D. Fla. Feb. 4, 2011) in support of its contention that the documents should be considered. This case has since been abrogated by the Eleventh Circuit in *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).  Regardless, *Wajsntat* is distinguishable because, while the *Wajsntat* court considered the passenger ticket, it did not analyze why the ticket contract was central to the complaint. *Wajnstat*, 2011 WL 465340, at *4 n.2.  This case is more analogous to the others in this district declining to consider the ticket contract and website. *Barham*, 2021 WL 3726144, at *6 (collecting cases).  Here, as in those cases, neither the passenger ticket contract or the shore excursion brochure are central to this particular claim.  Thus, these documents will not be considered as to this count at the motion to dismiss stage.

In support of his claim of negligence based apparent agency theory, Plaintiff alleges that RCL made the following manifestations which caused the Singhs to believe that the Excursion Entities had authority to act for the benefit of RCL: (1) RCL allowed its name to be utilized in connection with the advertising of the Excursion Entities; (2) RCL made all arrangements for the subject excursion without effectively disclosing to the Singhs that the subject excursion was being run by other entities; (3) RCL marketed the subject excursion using its company logo on its website and/or in brochures and/or on its ship without effectively disclosing that they were run by other entities; (4) RCL maintained an excursion desk on the ship where it offered, sold, and provided information to its passengers about the subject excursion; (5) RCL recommended that the Singhs not engage in excursions or tours that were not sold by RCL; (6) the fee for the excursion was charged and collected by RCL; and (7) the Singhs received a receipt of purchase of the excursion

26

solely from RCL. (Compl. ¶ 74). Plaintiff also alleges that the Singhs relied on the aforementioned manifestations in choosing the subject excursion and they would not have booked the excursion had they known the excursion was not operated by RCL. (*Id.* ¶¶ 75, 77). These allegations are sufficient. *See, e.g.*, *Heller*, 191 F. Supp. 3d at 1362 (citing *Ash v. Royal Caribbean Cruises, Ltd.*, No. 13-20619-CIV, 2014 WL 6682514, at *7 (S.D. Fla. Nov. 25, 2014)) (finding similar allegations sufficient). Therefore, **Count VI survives** as to RCL.

### vi.     Count VII: Negligence Based on Joint Venture Against Defendants

Plaintiff also alleges a claim of negligence based on joint venture between RCL and the Excursion entities. (Compl. ¶¶ 80–92). RCL moves to dismiss arguing that Plaintiff's Complaint lacks any factual basis. It further contends that the Tour Operator Agreement contains a provision stating that the excursion "[o]perator's relationship with Cruise Line during the Term of th[e] agreement shall be that of an independent contractor" and "[n]othing related in th[e] agreement shall be construed as constituting Operator and Cruise Line as . . . joint venture between the Parties thereto." (Tour Operator Agreement § 9).

To successfully plead negligence based on a joint venture theory, Plaintiff must allege: "(1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained." *Heller v. Carnival Corporation*, 191 F. Supp. 3d at 1362–63 (quoting *Skeen v. Carnival Corp.*, No. 08-22618-CIV, 2009 WL 1117432, at *3 n.3 (S.D. Fla. Apr. 24, 2009)).

RCL attaches the Tour Operator Agreement to its Motion, which the Court can consider at this juncture because it is referenced in the Complaint and is central to this claim.[6] Plaintiff refers

---

[6] *See supra* n.4.

to the Tour Operator Agreement explicitly in the Complaint and alleges that the joint venture originated from the agreement where RCL would "sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion."  (Compl. ¶¶ 81–82).  In *Woodley v. Royal Caribbean Cruises, Ltd.*, the district court analyzed the same Tour Operator Agreement that is at issue in this case.  472 F. Supp. 3d 1194 (S.D. Fla. July 14, 2020).  In dismissing the plaintiff's joint-venture-based negligence claim, Judge Moore looked to the Tour Operator Agreement's language explicitly disclaiming a joint venture relationship between RCL and the excursion entity involved.  *Id.* at 1209; *see also Barham*, 2021 WL 3726144, at *7 (dismissing negligence claim based on joint venture because the Tour Operator Agreement disclaims a joint venture relationship).

As in *Woodley*, here, Plaintiff has alleged that the joint venture relationship arises out of the Tour Operator Agreement.  The Agreement expressly disclaims a joint venture relationship between the parties.  (*See* Tour Operator Agreement, § 10 ("Nothing related in this agreement shall be construed as constituting Operator and Cruise Line as . . . joint venture between the Parties thereto")).  Because the theory joint venture is expressly disclaimed in the Tour Operator Agreement, Plaintiff's claim for a joint venture theory of vicarious liability cannot survive.  *See Woodley*, 472 F. Supp. 3d at 1210; *Barham*, 2021 WL 3726144, at *7.  Accordingly, **Count VII is dismissed without prejudice**.

### vii.    Count VIII: Third-Party Beneficiary

Plaintiff alleges that the Singhs are third-party beneficiaries of the contracts between RCL and the Excursion Entities.  RCL argues that Plaintiff's allegations do not support this claim, but even if they did, the Tour Operator Agreement directly contradicts Plaintiff's allegations.

To plead a claim for third-party beneficiary breach of contract, Plaintiff must sufficiently

allege (1) the existence of a contract to which the plaintiff is not a party; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff; (3) breach of that contract by one of the parties; and (4) damages to the plaintiff resulting from the breach.   *Lapidus v. NCL Am. LLC*, 924 F. Supp. 2d 1352, 1360–61 (S.D. Fla. 2014).

For a third party to have a legally enforceable right under the contract, conferring a benefit to the third party must have been the "direct and primary object of the contracting parties." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982 (11th Cir. 2005).  The parties' intent must be specific and clearly expressed in the contract "in order to endow the third party beneficiary with a legally enforceable right[.]"  *Id.*  Without any such intent, "any benefit on the third party is merely 'incidental,' and the third party has no legally enforceable right in the subject matter of the contract. *Id.* (quoting *Thompson v. Comm. Union Ins. Co. of N.Y.*, 250 So.2d 259, 262 (Fla. 1971); *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 680 (11th Cir. 1999)).  While the third parties do not need to be specifically named in the contract to qualify as intended beneficiaries, for a third party to qualify as intended beneficiaries, the contract must refer "to a well-defined class of readily identifiable persons that it intends to benefit."  *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1312 (S.D. Fla. 2011) (internal quotations omitted).

Plaintiff alleges in his Complaint that "[RCL] and the Excursion Entities entered into a contract to provide the subject excursion for passengers aboard [RCL's] ship(s)."  (Compl. ¶ 93). He further alleges that RCL and the Excursion Entities "intended that the contract primarily and directly benefit [RCL's] passengers, including the [Singhs]."  (*Id.* ¶ 94).  According to Plaintiff, the intent to benefit RCL's passengers is demonstrated by the provisions of the contract, which include:

29

(a) The purpose of the agreement explicitly stating that it is for the Excursion Entities to provide shore excursions to guests on [RCL's] vessels; (b) [RCL] having the right to charge its passengers the price that [RCL] determines in its sole discretion; (c) [RCL] having the sole discretion to provide its passengers a full or partial reimbursement of the excursion ticket if a passenger is dissatisfied; (d) [RCL] requiring that Excursion Entities exercise reasonable care for the passengers' safety at all times; (e) [RCL] requiring that the Excursion Entities satisfy and continue to satisfy the highest standards of quality in the industry; and/or (f) [RCL] requiring that the Excursion Entities maintain insurance for any and all injuries to passengers.

(*Id.* ¶ 96).

None of these provisions clearly and specifically expresses the parties' intent to confer a benefit to RCL's passengers.  In fact, the Tour Operator Agreement directly contradicts Plaintiff's arguments, stating that, "[o]ther than as expressly set forth herein, this Agreement shall not be deemed to provide third parties with any remedy, claim, right or action or other right."  (Agreement § 12.11).  Many courts in this District have held that, "[t]o the extent that Plaintiff alleges that [RCL] and [the Excursion Entities] contracted to ensure the safety of [RCL's] passengers, this is far too generalized to support a third party beneficiary claim."  *Nichols v. Carnival Corp.*, 2019 WL 11556754, at *11 (S.D. Fla. June 21, 2019) (quoting *Aronson*, 30 F. Supp. 3d at 1398); *Barham v. Royal Caribbean Cruises, Ltd.*, 2021 WL 3726144, at 7–8 (dismissing third-party beneficiary claim in action against RCL and the Excursion Entities based on the same Tour Operator Agreement, because "it is implausible that the contract intended to make the Plaintiffs third party beneficiaries."); *Heller v. Carnival Corp.*, 191 F. Supp. 1352, 1364 (S.D. Fla. 2016) (dismissing third-party beneficiary claim based on the contract's requirement that the excursion entities maintain insurance and/or exercise reasonable care in the operation of a Segway tour); *Finkelstein v. Carnival Corp.*, No. 1:14-CV-24005, 2015 WK 12765434, at *4 (S.D. Fla. Jan. 20, 2015) (dismissing a third-party beneficiary claim because contract's requirement that excursion operators maintain insurance and exercise reasonable care "fail[ed] to satisfy the pleading requirements

because they do not clearly and specifically express Defendants' intent to primarily and directly benefit Plaintiffs.") (internal quotations omitted); *Thompson v. Carnival Corp.*, 174 F. Supp. 3d at 1344 (dismissing third-party beneficiary claim where plaintiff alleged that "Carnival and the Excursion Entities entered into a contract that primarily and directly benefit[s] him by requiring the Excursion Entities to maintain insurance and/or exercise reasonable care in the operation of the subject shore excursion."); *Gayou*, 2012 WL 2049431, at *11 (dismissing third-party beneficiary claim where intent to benefit third party was predicated upon statement that excursion operator "will satisfy the highest standards in the industry.").

The Court agrees with these decisions. Plaintiff's allegations fail to satisfy the pleading requirements because they do not "clearly and specifically express RCL and the IDT's intent to primarily and directly benefit Plaintiff[.]" *Aronson*, 2014 WL 3408582, at *15. Accordingly, **Count VIII is dismissed without prejudice**.

### viii.   Count IX: Breach of Non-Delegable Duty Against RCL

Finally, Plaintiff alleges that "[b]y promoting, vouching for, contracting for and profiting from the excursion ticket contract, [RCL] owed [the Singhs] the non-delegable contractual duty to provide them with a reasonably safe excursion." (Compl. ¶ 100). Plaintiff further alleges that RCL breached its non-delegable "contractual and/or tort duty to provide a reasonably safe excursion[.]" (Compl. ¶ 101). RCL argues that this claim should be dismissed for failure to state a claim because there is no express provision in any contract imposing this duty and therefore Plaintiff seeks to impose an expanded duty upon RCL that is not supported by law. Plaintiff counters relying on *Witover v. Celebrity Cruises*, 161 F. Supp. 3d 1139 (S.D. Fla. 2016), and *Bailey v. Carnival Corp.*, 369 F. Supp. 3d 1302 (S.D. Fla. 2019), to support his position that RCL owes a contractual, non-delegable duty to provide a "reasonably safe excursion." In both *Witover* and

*Bailey*, the district courts found that the cruise line had a contractual duty to provide a safe excursion, but those cases presented special circumstances.  In *Witover*, for instance, the plaintiff was handicapped, and she alleged that the shore excursion contract had been orally modified by the cruise line's representations and reassurance to her that the excursion would be handicapped accessible.  161 F. Supp. 3d at 1146.  The district court found these allegations to be sufficient to withstand dismissal.  *Id.*  Similarly in *Bailey*, the plaintiff alleged that the cruise line orally and "vouched" for the zipline tour in question by "pointedly assur[ing] her that the tour was 'safe, insured, reputable, and reliable.'"  369 F. Supp. 3d at 1309.

Unlike in these cases, Plaintiff does not allege that RCL made specific representations like the ones in *Bailey and Witover*, so as to orally modify the excursion contract.  Nor does Plaintiff allege that the Singhs were handicapped or had special needs, much less that they communicated these needs to RCL and that RCL reassured them that the excursion would be safe given their particular circumstances.  Accordingly, **Count IX is dismissed without prejudice**.

### A.  RCL's Request to Strike Plaintiff's Request for Non-Pecuniary Damages

RCL requests that the Court strike Plaintiff's request for non-pecuniary damages because it asserts that DOHSA applies and provides for the sole remedy.  Plaintiff does not address this argument in his opposition.  Generally, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 Fed. App'x 432, 434 (11th Cir. 2014).  The Court finds that RCL sets forth well-reasoned grounds for striking Plaintiff's request for non-pecuniary damages based on DOHSA, which only allows for the award of pecuniary damages.  *See* 46 U.S.C. § 30303; *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1315 (S.D. Fla. 2019); *Nichols v. Carnival Corp.*, No. 19-cv-20836, 2019 WL 11556754, at *4 (S.D. Fla. June 21, 2019) (citing *Ridley v. NCL (Bah.) Ltd.*,

824 F. Supp. 2d 1355, 1360 (S.D. Fla. 2010)).  Plaintiff himself relies on DOHSA in his Complaint, thus conceding that DOHSA applies, and in the absence of a response from Plaintiff, the Court finds no basis to assess any potentially applicable counterarguments.  Accordingly, Plaintiff's request for non-pecuniary damages is hereby stricken.

IV.    **CONCLUSION**

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that:

1.    The Excursion Entities' Motions to Dismiss, (ECF Nos. 19, 23), are **GRANTED**. Defendants ID Tours New Zealand Limited and White Island Tours Limited are hereby dismissed for lack of personal jurisdiction.

2.    RCL's Motion to Dismiss, (ECF No. 10), is **GRANTED in part and DENIED in part**.  Counts II, V, VII, VIII, and IX are dismissed without prejudice.

3.    Plaintiff may file an amended complaint in accordance with this Order **no later than December 31, 2021**.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of December, 2021.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Becerra
All Counsel of Record